## ACKLA v. ACKLA.

A mortgage being now considered and treated merely as a security for the payment of money, or the performance of some other act, is simply *a chose in action*, extinguishable by a *parol release*, which equity will execute as an agreement not to sue, or by turning the mortgagee into a trustee for the mortgagor: provided it proceeds upon a sufficient consideration.

*Such a release, or agreement*, may be established presumptively, by showing declarations and acts of the parties inconsistent with an averment of the continued existence of the mortgage, and repugnant to the rights and liabilities created by it; as well as by direct proof.

Where there are *bonâ fide* purchasers of interests in lands devised by a testator, in his will, to and amongst his children, and a part thereof devised to one of his children was made subject to the maintenance of his widow during her life; *if it appear that the widow*, who claimed a beneficial interest in the lands so devised, by virtue of a mortgage given to the testator, in his lifetime, and herself, had, by deceptive acts of acquiescence in the provisions of the will, continued for a period of seven or eight years, given them reason to confide in the final disposition of the said lands as made by the will and as accepted by all the parties claiming under it; she will be estopped from impeaching the title of such *bonâ fide* purchasers, although it cannot be shown that, in fact, they acted upon this confidence.

IN error from the Court of Common Pleas of Bradford county.

*July* 12. This was a *scire facias* on a mortgage, in which Hannah Ackla, who survived Benjamin Ackla, was plaintiff, and John Ackla, the mortgagor, Edward Overton, Julius Holden, John Sweet, Adolphus Holden, and Israel Smith, terre-tenants, were defendants.

The facts of the case, so far as they are necessary to elucidate the questions decided here, are so fully and clearly stated in the opinion of this court, that a repetition of them here would only serve to swell this report. The charge of the *court below* to the jury was excepted to by the defendants. The jury found a verdict for the plaintiff; whereupon the defendants sued out this writ of error, and assigned the following errors to the charge of the court:

1. The court erred in saying that they did not consider the defence available except as to certain portions of the land.

2. The court erred in saying that Hannah Ackla's joining with her son William, and her general remarks as to her claims under the will, would not postpone her rights.

3. The court erred in saying that the assenting to the line between William and John by the old lady; and the partition made among the sons in pursuance of old Mr. Ackla's will; and the continued occupation from that time by them and those claiming under them, and the maintenance by Mr. Overton of Mrs. Ackla up to the time of the trial in pursuance of the will; and her declarations

made to him as to the prosecuting of this mortgage without her consent, did not constitute a good defence to the whole claim under the mortgage.

4. The court erred in not instructing the jury that if they believed the defendants' evidence, they have made a good defence to the whole of the plaintiff's claim.

5. The court erred in taking the whole defence from the jury, and instructing them that they must find for the plaintiff.

*Overton, Murcur,* and *Greenough,* for plaintiffs in error.—A mortgage in Pennsylvania is merely a chose in action; Rickart *v.* Madeira, 1 Rawle, 325. It is literally and legally but a bare security for the payment of the money therein mentioned; Craft *v.* Webster, 4 Rawle, 255. It may be released by parol; Id. 255, 256; Wentz *v.* Dehaven, 1 Serg. & Rawle, 312, 317; Whitehill *v.* Wilson, 3 Penna. Rep. 414.

The bare fact of the mortgage standing unsatisfied upon record, is not sufficient notice when the other facts show sufficient evidence of its extinguishment or satisfaction. Brown *v.* Simpson, 2 Watts, 243, 244. The acts and declarations of the mortgagor and mortgagee are strengthened by the fact of the will being on record; Id. 244. As a written memorandum, it is evidence against the mortgagee and those claiming under him; Brown *v.* Bank of Chambersburg, 3 Barr, 187.

*Elwell* and *Case,* contrà.

*July* 20. BELL, J. Hannah Ackla, who survived Benjamin Ackla, sued out a *scire facias sur mortgage* against John Ackla, as mortgagor, and Edward Overton, Julius Holden, John Sweet, Gustavus A. Holden, and Israel Smith, as terre-tenants of the lands pledged. The mortgage sued was executed and delivered on the 19th of September, 1826, by John Ackla to Benjamin Ackla and Hannah his wife, to secure payment, in seven annual instalments, of the purchase-money of a certain tract of land then owned by Benjamin, and on the same day conveyed by him and wife to John, who was one of their sons. Before the trial of the cause, the plaintiff caused a judgment to be entered in favour of Israel Smith, as terre-tenant of the mortgaged premises, and by an entry upon the docket, "released John W. Sweet and Gustavus A. Holden from the suit." This entry seems to have been considered and treated as a judgment in favour of the last-named persons; for we hear no more of them in the subsequent proceedings. John Ackla, whose

U

interest in the land had been divested by a sheriff's sale and con-
veyance, did not appear to take defence. The remaining defend-
ants, Edward Overton and Julius Holden, pleaded, shortly, "pay-
ment, release, &c., and that the mortgage was no lien on the land
held by them." The land so held is a portion of the original tract
formerly in the seisin of Benjamin Ackla, and which, notwithstand-
ing his prior conveyance of it to his son John, he assumed to devise
in fee, in distinct parts described by metes and bounds, to his sons
Amos, John, William, Benjamin, and Jonathan, whose interests
under the will, with the exception of that given to Amos, became
vested, by subsequent mesne conveyances, in Overton and J. Hol-
den, in severalty. The only question presented for determination
is, whether the mortgage sued by the plaintiff binds the lands in
their hands. The defendants, who have pleaded, do not pretend
actual payment of the money secured by the mortgage, nor the
existence of a formal, legal release; but they aver that by the facts
proved by them on the trial, the plaintiff is estopped from setting
up the mortgage as a subsisting encumbrance, or at the very least,
that ground is laid for the legitimate inference to be drawn by a
jury, of a parol release by Benjamin Ackla, the elder, in his life-
time, in pursuance of a family arrangement whereby it was agreed
the mortgage, as an operative instrument, should be set aside and
relinquished, in consideration of which, John, the son and grantee,
abandoned his claim upon the land under the deed made to him by
his father, which agreement was, ever after, recognised and acted
upon by all the parties in interest.

It is not, now, to be questioned that a mortgage being considered
and treated merely as a security for the payment of money, or the
performance of some other act, is simply a *chose in action* extin-
guishable by a parol release, which equity will execute as an agree-
ment not to sue, or by turning the mortgagee into a trustee for the
mortgagor. Craft *v.* Powel, 4 Rawle, 255; Wentz *v.* Dehaven,
1 Serg. & Rawle, 312; provided it proceeds upon a sufficient con-
sideration. Whitehill *v.* Wilson, 3 Penna. Rep. 405. Nor can it
be doubted that such a release or agreement may be established,
presumptively, by showing declarations and acts of the parties in-
consistent with an averment of the continued existence of the
mortgage and repugnant to the rights and liabilities created by it,
as well as by express proof. The presumption will of course be
more or less violent according to the nature of the circumstances
that give birth to it; and, as in all other cases of natural presump-
tions, it is for a jury under proper directions to determine the

degree of weight that ought to be accorded to the facts proved as tending to establish the disputed averments. These may be of such a character as at once to produce conviction in the mind of the inquirer, or they may leave hesitancy and doubt; but yet whatever their character, they are to be submitted to the scrutiny of that portion of a legal tribunal specially constituted to ascertain and determine matters of fact. Lewis *v.* Carstairs, 5 Watts & Serg. 205. In attempting the application of these principles, the first query that presents itself, is, did the defendants, before the trial below, show to the jury facts from which they might fairly deduce the existence of an agreement such as was set up as a defence? If so, the learned judge who tried the cause, fell into the error of withdrawing material facts from the cognisance of the jury, upon the assumption that in law they could not avail the defendants. A cursory glance at the very peculiar features of the case, as these are disclosed by the defendants' evidence, will, perhaps, furnish the best answer to the query propounded, so far as it is necessary we should answer it.

On the 19th of September, 1826, Benjamin Ackla and Hannah his wife, the plaintiff's intestate, and who instituted this suit, in consideration of the sum of $3000, conveyed in fee-simple to their son, John Ackla, a tract of land belonging to the father, and on the same day accepted from the grantee a mortgage to secure the payment of the purchase-money with interest, in seven yearly payments. At the time of these conveyances, Amos, another son, occupied a part of the premises containing about thirty acres: the father occupying and cultivating the remainder of the tract. Immediately thereafter, John entered upon and became possessed of a portion of that which was in the father's occupancy, adjoining Amos, being the same portion that was subsequently devised to John. Some time after, William, having married, seems to have become jointly possessed with his father of that part of the land retained by the latter for his own immediate use, including the original mansion-house. Thus these parties continued to live and respectively to enjoy up to the year 1835, a period of nine years from the date of the deed to John Ackla, without payment of any portion of the principal sum or interest thereon secured by the mortgage, or, so far as appears, any, the slightest recognition of its continued existence. In the mean time, on the 26th of September, 1826, Benjamin Ackla and wife conveyed to Daniel Cole and William Sill, in pursuance of a previous contract, one acre of the tract before granted to John Ackla without any interference on his part. On the 11th

of April, 1835, the father made his last will, by which he divided the tract amongst his five sons, Amos, John, William, Jonathan, and Benjamin, by metes and bounds : the two first taking the parts they had before held, either by sufferance or agreement, and William's portion being subjected to the burden of the support and maintenance of his mother during her life. Were the contest between the representatives of the father's estate and John, or those claiming under him and the other devisees, it will scarcely admit of denial, that these facts almost unmistakeably prove the existence of some such agreement and family arrangement as that averred by the defendants, made upon a sufficient consideration· executed; for though a grant by deed may not be avoided by parol simply, yet I take it, John, under the circumstances that have occurred, would be precluded from setting up the conveyance to him in destruction of the interests acquired under his acquiescence. Such an agreement executed between the father and son, would, I conceive, effectually destroy any interest the wife, Hannah, originally had in the mortgage; for if we concede this interest to have been a beneficial one, notwithstanding the land conveyed was the estate of the husband, though the right of survivorship resided in her, still the former, by an exertion of his marital rights, had power to divest her title, either by reducing the *chose in action* to possession, by passing it as a gift, or releasing the land mortgaged; and we have seen that the latter mode of interference may be as effectual by parol on a sufficient consideration, as by deed under seal.

But it appears to us, that still further proofs were furnished of the alleged agreement and of the wife's acquiescence in it not only before, but long after the death of her husband, the testator.    To attempt an estimate of the value of these proofs, or to measure the length to which they may be supposed to reach towards conclusiveness, might be thought a trespass upon the proper business of the jury that may hereafter be called to pass between these parties litigant.    Declining, therefore, such a task, it will be sufficient for present purposes to point to the fact, that after the death of the testator, the devisees, under the eye and with the knowledge and seeming approbation of their mother, the surviving mortgagee, entered on the parcels of land devised to them respectively, and claimed to hold them by virtue of the devises, she living with William, and demanding at his hands her maintenance and support, by force of the obligation assumed by him under the will; that afterwards, upon a dispute occurring between him and John respecting the line dividing their possessions, as indicated in the testament,

she, still residing with William, interfered to bring about an accommodation by prevailing upon the latter to consent to a slight alteration of the line of the will for the benefit of John, who thereupon expressed his satisfaction and consequent determination to hold under the will; that in 1837, she joined William in a deed to convey a part of the land devised to him, for, as it would seem, the purpose of relieving the property thus conveyed from the burden of her supposed charges upon it; and finally, that almost up to the inception of this action, she asserted her privileges as conferred by the will of her husband, thus tacitly repudiating the mortgage, which, indeed, it does not appear she ever mentioned as a continuing encumbrance on the land. Even apart, then, from any action of her husband in his own right, in the exercise of his marital power, here is, certainly to be found some evidence of a ratification by the widow, in consideration of benefits to be enjoyed under the will, of the alleged agreement, if such were made, between her husband and John, or of a new substantive agreement between her and the devisees, sufficient, if established, to conclude her in a contest with them. But the case proceeds a step beyond this. Here are *bona fide* purchasers for value, of the interests devised; and setting aside the notion of agreement, if it appear that, by deceptive acts of acquiescence in the provisions of the will of her husband, the widow may have given them reason to confide in the final disposition of the property made by the will, as accepted by all the parties claiming under it, she will be stopped from impeaching their titles, though  it cannot be shown that, in fact, the purchasers acted upon this confidence. Lewis *v.* Carstairs, 5 Watts & Serg. 209. This equitable estoppel, as it is sometimes called, is said to have its root in the equitable principle which casts a loss from a voluntary, though innocent act, on the author of it. Martin *v.* Ives, 17 Serg. & Rawle, 366. These remarks cover all the errors assigned, and their tenor sufficiently points out the mistake committed in the charge to the jury. The defendants' evidence should have been left to the jury, with instructions in accordance with the principles to which we have adverted.

Judgment reversed, and a *venire de novo* awarded.