[Civ. Nos. 16611, 16612.   Second Dist., Div. Two.   Dec. 7, 1948.]

HELEN S. SCHROEDER, Appellant, v. HOMER S. WILSON, Individually and as Executor, etc., Respondent.

(Two Cases.)

64

John J. Varni and W. W. Middlecoff for Appellant.

Robert J. Schmorleitz and Thomas W. Clarke for Respondent.

WILSON, J.—Plaintiff filed two actions in the superior court to quiet title, one to real property, the other to personal property. Her complaints included the conventional allegations in actions to quiet title. Defendants' answers contained appropriate denials. The cases were tried together on the same evidence. Findings and judgment were rendered in favor of defendants in each case and plaintiff has appealed from the judgments.

Decedent John W. Abbott in his lifetime was the owner of the real and personal property involved in the actions. The document on which plaintiff bases her claim to ownership of

the property was signed by Mr. Abbott on June 1, 1947, and reads as follows:

"This is my last Will.

1. I give and devise all my property to Helen S. Schroeder of Hollywood, Cal.
2. I hereby appoint _____ executor of this Will without bonds
3. I hereby revoke all Wills heretofore made by me, and I never had any issue or child by birth or adoption

Dated June _____ 1947          J. W. Abbott.

(John)

Witnesses: Foregoing Will was signed in our presents and we each at the request of said testator in his presence and the presence of each other we sign as Witneses.

_____          _____     "

The instrument bears a certificate of acknowledgment setting forth that its execution was acknowledged on June 3, 1947, by Mr. Abbott before W. W. Middlecoff, a notary public, who is one of plaintiff's attorneys. On May 31, 1947, Mr. Abbott had executed a will, signed and witnessed as required by statute, leaving all his property to a brother and sister living in England. On June 3, 1947, two days after he had signed the document above quoted and on the same day on which he is purported to have acknowledged its execution before Mr. Middlecoff but after Mr. Middlecoff had visited him, he executed another will in favor of his brother and sister in England.

Since the document in question is not witnessed in the manner in which a will is required by law to be witnessed, it is admitted that it has no validity as a will. Plaintiff advances the novel but fallacious theory that it can be made to operate as a deed and asks the court to arrive at that conclusion by omitting from consideration all parts of the document except the words "I give all my property to Helen S. Schroeder" and to treat the remaining portions of the document as void and having no existence. The instrument is in the form of a will and has none of the characteristics of a deed; it is titled a will; it gives and *devises*; it provides for an executor, though none is named; it revokes all former wills; it declares that the maker has no child or issue; attached to it is a certificate for the signature of witnesses. None of these

features is found in a deed, nevertheless plaintiff contends that they should be omitted from consideration in order to make a present conveyance to her.

It is a rule of interpretation of a deed as well as of a will that the true intent and purpose of the maker must be ascertained by a consideration of the whole instrument, not of detached clauses (*Whitcomb* v. *Worthing*, 30 Cal.App. 629, 631 [159 P. 613]), and by considering every part of it and viewing it in the light of the circumstances surrounding the maker at the time of its execution. (*Pico* v. *Coleman*, 47 Cal. 65, 67; *Aldridge* v. *Aldridge*, 202 Mo. 565 [101 S.W. 42, 43]; *Belgarde* v. *Carter* (Tex.Civ.App.), 146 S.W. 964, 966.) The fact that the instrument is void as a will does not transmute it into a deed. No part of the instrument indicates an intention to pass title to decedent's property until after his death.

Mr. Abbott lived alone in his home in the hills about 10 miles from Palmdale in Los Angeles County; he had been ill for some time before the signing of the three documents above described. In support of her contention that Mr. Abbott intended the document to operate as a present gift of his property plaintiff testified that some months before the signing of the document in question Mr. Abbott had proposed marriage to her and that she had consented to marry him; that on May 31 plaintiff, with her sister and brother-in-law, went to Mr. Abbott's home and after they had had a conversation of some length Mr. Abbott said, "Helen, get me a paper, I want to dictate something to you; I want to turn my property over to you"; that she suggested they get an attorney; that when Mr. Abbott's doctor arrived he stated that Mr. Middlecoff, in Palmdale, was an attorney; that in company with one Mr. Woolcott she went to Palmdale and conferred with Mr. Middlecoff, who stated that he was ill and could not go to Mr. Abbott's home; that in response to plaintiff's statement that the latter wanted to turn his property over to her, Mr. Middlecoff dictated and Mr. Woolcott wrote the above document under which plaintiff claims title; that on Sunday, June 1, plaintiff and Mr. Woolcott returned to Mr. Abbott's home; that he carefully read the paper which had been dictated by Mr. Middlecoff and said, "Helen, this is just what I want. There isn't any person that is more deserving of my properties, my belongings, than yourself. If anything should happen to me, if I should pass on, you can live to enjoy it. Now, take this paper and put it in your purse and be sure

to take care of it''; that Mr. Abbott then stated he had a strongbox and at his request she handed him the keys; that he gave her the keys and told her to put them in her purse, which she did; that on the next day she returned the keys to Mr. Abbott so that he could unlock the box if he needed any money.

Mr. Middlecoff, one of plaintiff's attorneys, who has been practicing law for a great many years in California, testified that when plaintiff and Mr. Woolcott called at the hotel at which he was staying in Palmdale he told them he was unable to go to Mr. Abbott's ranch but he would dictate a form for Mr. Abbott's signature; that he dictated and Mr. Woolcott wrote the document; that on June 3 plaintiff and Mr. Woolcott returned and showed him the document with Mr. Abbott's signature appended; that he told them the document was void as a will but that ''it was possible that this will—I called it a will at that time—might be valid as a deed, but that I didn't know for certain''; that he said ''it may be of some value, but it ought to be acknowledged before a notary public''; that he went to Mr. Abbott's home with plaintiff and Mr. Woolcott and after a few words of conversation asked if he acknowledged that he executed and delivered the instrument to plaintiff on Sunday previously and he answered in the affirmative. Since Mr. Middlecoff advised plaintiff that the document was void as a will and was doubtful of its efficacy as a deed the natural course for a lawyer would have been to prepare a will in proper form and have it signed and witnessed as required by law.

There is nothing in the document or in the evidence indicating in the slightest degree that decedent intended to convey the property to plaintiff in his lifetime, contrary to plaintiff's contention that it was a deed transferring title immediately on delivery. On the other hand, after reading the document and before signing it he said, ''This is just what I want, . . . If anything should happen to me, if I should pass on, you can live to enjoy it.'' These words indicate clearly that decedent did not intend a conveyance *in praesenti* and that his intent was that it should become effective only ''if anything should happen'' to him.

Dr. Wilson, defendant individually and as executor of decedent's last will, called to see Mr. Abbott two or three times a day during the latter's last illness. He called shortly after Mr. Abbott had acknowledged to Mr. Middlecoff that he had signed the document of June 1. Mr. Abbott said,

"Helen is here. I just signed a paper for her. . . . I just signed a paper, something like the one we fixed up last night for Helen,'' the words ''the one'' referring to the will of May 31. His next remark about the paper was, ''Of no importance, but it might be wise to have a similar paper that would be subsequent to that date.'' Shortly thereafter he said ''Well, she says she is going to stay. Can you get her to go home,'' to which Dr. Wilson replied that that was Mr. Abbott's job. These remarks do not indicate any desire on decedent's part that plaintiff should have the property. His intention that she should not receive any of his property is demonstrated by his request made to Dr. Wilson immediately after the foregoing remarks that a new copy of his will of May 31 should be prepared. Such a will was drafted and was signed by decedent on the same day in the presence of five witnesses. This is the document hereinbefore referred to as the third will and the one which at the time of the trial of the instant action was being probated in the superior court.

The effort made by the courts to construe an instrument as a deed, where the statutory provisions for the execution of a will have not been followed, is applicable only in cases where the language used in the instrument leaves the intent of the maker in doubt. Where a testamentary intent clearly appears from the language in the document the court will not construe the instrument in a different manner merely for the purpose of preventing it from being invalid. There is no doubt as to the intention of the decedent in the instant case since his intent and purpose were clearly expressed in the instrument in question.

The personal property involved in the second action consisted of the contents of an iron box which was in decedent's bedroom. Plaintiff testified that he gave her the keys to the box; that she lifted the box, retained the keys for a day, and then returned them to decedent. She maintains this to be a symbolical delivery of the box and its contents. Without relating the evidence concerning such alleged delivery, it is sufficient to say that there is nothing in the record that indicates Mr. Abbott's intention to transfer title to the box or its contents to plaintiff. Furthermore, the court, the trier of facts, was not required under all the circumstances surrounding the occurrences above described to believe plaintiff's uncorroborated testimony and apparently did not do so.

Plaintiff asserts that decedent's brother and sister are necessary parties to these actions and requests a reversal of

the judgments with directions that they be made parties. The executor is the only necessary party since he is the representative of the heirs and devisees. Furthermore, plaintiff instituted the actions and it was within her power to name as defendants all persons who might be necessary to an adjudication of the issues involved.

Plaintiff contends that the findings are insufficient for the reason that they merely find the allegations of the complaint to be untrue and that plaintiff has no right, title or interest in the property. Since the instrument on which plaintiff bases her claim of title was not pleaded in the complaints defendants were not called upon to allege any affirmative defense thereto and did not do so, hence the findings of fact are sufficient.

Plaintiff also advances the plea that the trial court should have made findings on the question of fraud and undue influence. This argument is based on the fact that defendants' counsel, in his opening statement, indicated that evidence on those issues would be offered. Since no such evidence appears in the record a finding thereon was unnecessary.

The judgment in each case is affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied December 23, 1948, and appellant's petition for a hearing by the Supreme Court was denied February 3, 1949.