[L. A. No. 25689. In Bank. Apr. 13, 1961.]

LOUIS BERNKRANT et al., Appellants, v. DOROTHY BLACK FOWLER, as Executrix, etc., Respondent.

Betty Aronow and George Rudiak for Appellants.

Egley & Wiener and Paul Egley for Respondent.

TRAYNOR, J.—Plaintiffs appeal on the clerk's transcript from a judgment for defendant as executrix of the estate of John Granrud. They contend that the findings of fact do not support the judgment.

Some time before 1954 plaintiffs purchased the Granrud Garden Apartments in Las Vegas, Nevada. In 1954 the property was encumbered by a first deed of trust given to secure an installment note payable to third parties and a second deed of trust given to secure an installment note payable to Granrud at $200 per month plus interest. Granrud's note and deed of trust provided for subordination to a deed of trust plaintiffs might execute to secure a construction loan. In July 1954, there remained unpaid approximately $11,000 on the note secured by the first deed of trust and approximately $24,000 on the note payable to Granrud. At that time Granrud wished to buy a trailer park and asked plaintiffs

to refinance their obligations and pay a substantial part of their indebtedness to him. At a meeting in Las Vegas he stated that if plaintiffs would do so, he would provide by will that any debt that remained on the purchase price at the time of his death would be cancelled and forgiven. Plaintiffs then arranged for a new loan of $25,000, the most they could obtain on the property, secured by a new first deed of trust. They used the proceeds to pay the balance of the loan secured by the existing first deed of trust and $13,114.20 of their indebtedness to Granrud. They executed a new note for the balance of $9,227 owing Granrud, payable in installments of $175 per month secured by a new second deed of trust. This deed of trust contained no subordination provision. The $13,114.20 was deposited in Granrud's bank account in Covina, California and subsequently used by him to buy a trailer park. Plaintiffs incurred expenses of $800.90 in refinancing their obligations.

Granrud died testate on March 4, 1956, a resident of Los Angeles County. His will, dated January 23, 1956, was admitted to probate, and defendant was appointed executrix of his estate. His will made no provision for cancelling the balance of $6,425 due on the note at the time of his death. Plaintiffs have continued to make regular payments of principal and interest to defendant under protest.

Plaintiffs brought this action to have the note cancelled and discharged and the property reconveyed to them and to recover the amounts paid defendant after Granrud's death. The trial court concluded that the action was barred by both the Nevada and the California statute of frauds; that to remove the bar of the statutes, the action must be one for quasi-specific performance in which an heir or beneficiary under the will would be an indispensable party; and that defendant was not estopped to rely on the statutes of frauds.

Probate Code, section 573, provides that "Actions for the recovery of any property, real or personal, or for the possession thereof, or to quiet title thereto, or to enforce a lien thereon, or to determine any adverse claim thereon, and all actions founded upon contracts . . . may be maintained by and against executors and administrators in all cases in which the cause of action whether arising before or after death is one which would not abate upon the death of their respective testators or intestates. . . ." Since the present action is founded on contract and involves an adverse claim to an interest in real property, it was properly brought against

the executrix pursuant to this section. Moreover, since plaintiffs do not seek to enforce a trust against any of the beneficiaries of the estate, none of the beneficiaries is an indispensable party. (*Cf. Bank of California* v. *Superior Court,* 16 Cal.2d 516, 524 [106 P.2d 879].) Apart from seeking the recovery of sums paid directly to defendant to protect their interests pending the action, plaintiffs seek only a determination that pursuant to their contract with Granrud their liability on the note has been discharged and the security interest in the property thereby released. Under these circumstances defendant represents all those interested in the estate just as she would had she brought an action to enforce the note and been met with the defense that it had been discharged. (*McCaughey* v. *Lyall,* 152 Cal. 615, 616-618 [93 P. 681]; *Patchett* v. *Webber,* 198 Cal. 440, 448 [245 P. 422]; *Estate of Kessler,* 32 Cal.2d 367, 369 [196 P.2d 559]; *Schroeder* v. *Wilson,* 89 Cal.App.2d 63, 68-69 [200 P.2d 173]; *Bank of America* v. *O'Shields,* 128 Cal.App.2d 212, 217 [275 P.2d 153]; *Cadigan* v. *American Trust Co.,* 131 Cal.App.2d 780, 781 [281 P.2d 332]; *Beyl* v. *Robinson,* 179 Cal.App.2d 444, 456 [4 Cal.Rptr. 18].)

 Moreover, since plaintiffs do not seek a money judgment payable out of the assets of the estate but only a determination that their obligations have been discharged, they were not required to file a claim against the estate (see Prob. Code, § 707) and were not precluded by subdivision 3 of section 1880 of the Code of Civil Procedure[1] from testifying to events occurring before Granrud's death. (*Porter* v. *Van Denburgh,* 15 Cal.2d 173, 176-177 [99 P.2d 265]; *Savings Union Bank etc. Co.* v. *Crowley,* 176 Cal. 543, 547 [169 P. 67]; *Calmon* v. *Sarraille,* 142 Cal. 638, 642 [76 P. 486]; *Alvarez* v. *Ritter,* 67 Cal.App.2d 574, 579-580 [155 P.2d 83]; *Streeter* v. *Martinelli,* 65 Cal.App.2d 65, 71-73 [149 P.2d 725]; *Beyl* v. *Robinson,* 179 Cal.App.2d 444, 455-456 [4 Cal. Rptr. 18]; *Sperry* v. *Tammany,* 106 Cal.App.2d 694, 698 [235 P.2d 847]; *Miller & Lux, Inc.* v. *Katz,* 10 Cal.App. 576, 578 [102 P. 946]; see *People* v. *Olvera,* 43 Cal. 492, 494.) To the extent that it indicates that subdivision 3 of section 1880

---

[1]Section 1880 provides: ''The following persons cannot be witnesses:

''3. Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted, against an executor or administrator upon a claim, or demand against the estate of a deceased person, as to any matter or fact occurring before the death of such deceased person.''

is applicable in an action such as this one, *Norgard* v. *Estate of Norgard,* 54 Cal.App.2d 82 [128 P.2d 566], is inconsistent with the foregoing authorities and is disapproved.

Subdivision 6 of section 1624 of the Civil Code provides that "An agreement which by its terms is not to be performed during the lifetime of the promisor, or an agreement to devise or bequeath any property, or to make any provision for any person by will" is "invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by his agent." (See also Code Civ. Proc., § 1973, subd. 6.) Plaintiffs concede that in the absence of an estoppel, the contract in this case would be invalid under this provision if it is subject thereto. They contend, however, that only the Nevada statute of frauds is applicable and point out that the Nevada statute has no counterpart to subdivision 6. Defendant contends that the California statute of frauds is applicable, and that if it is not, the Nevada statute of frauds covering real property transactions invalidates the contract.[2]

We have found no Nevada case in point. We believe, however, that Nevada would follow the general rule in other jurisdictions, that an oral agreement providing for the discharge of an obligation to pay money secured by an interest in real property is not within the real property provision of the statute of frauds, on the ground that the termination of the security interest is merely incidental to and follows by operation of law from the discharge of the principal obligation. (*Schweider* v. *Lang,* 29 Minn. 254 [13 N.W. 33, 34, 43 Am. Rep. 202] ; *Givens* v. *Featherstone,* (Tex.Civ.App.) 12 S.W.2d 613, 614] ; *Riley* v. *Atherton,* 185 Ark. 425 [47 S.W.2d 568] ; *Brown* v. *Ruffin,* 189 N.C. 262 [126 S.E. 613, 616] ; *First Nat. Bank* v. *Gallagher,* 119 Minn. 463 [138 N.W. 681, 682, Ann.Cas. 1914B 120] ; *Runyan* v. *Mersereau,* 11 Johns.

[2]Nevada Revised Statutes, section 111.205, subdivision 1, provides: "No estate or interest in lands, other than for leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in · any manner relating thereto, shall be created, granted, assigned, surrendered or declared after December 2, 1861, unless by act or operation of law, or by deed or conveyance, in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same, or by his lawful agent thereunto authorized in writing."

Section 111.210, subdivision 1, provides: "Every contract for the leasing for a longer period than one year, or for the sale of any lands, or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, expressing the consideration, be in writing, and be subscribed by the party by whom the lease or sale is to be made."

(N.Y.) 534, 538; *Ackla* v. *Ackla,* 6 Pa. 228, 230; *McKenzie* v. *Stewart,* 196 Ala. 241 [72 So. 109, 110] ; *Mutual Mill Ins. Co.* v. *Gordon,* 12 Ill. 366 [12 N.E. 747, 750] ; *Benavides* v. *White,* 94 Cal.App.2d 849, 850 [211 P.2d 597] ; see also *Wright* v. *Donaubauer,* 137 Tex. 473 [154 S.W.2d 637, 639] ; *Rigney* v. *Lovejoy,* 13 N.H. 247, 253; *Dougherty* v. *Randall,* 3 Mich. 581, 586; *Flyer* v. *Sullivan,* 284 App.Div. 697 [134 N.Y.S.2d 521, 523] ; 2 Corbin on Contracts, pp. 394-397; contra, *Parker* v. *Barker,* 43 Mass. (2 Metc.) 423, 431-432; *Duff* v. *United States Trust Co.,* 327 Mass. 17 [97 N.E.2d 189, 191] ; *Brooks* v. *Benham,* 70 Conn. 92 [38 A. 908, 910, 39 A. 1112, 66 Am.St.Rep. 87] ; *Phillips* v. *Leavitt,* 54 Me. 405, 407.)

We are therefore confronted with a contract that is valid under the law of Nevada but invalid under the California statute of frauds if that statute is applicable. ▮ We have no doubt that California's interest in protecting estates being probated here from false claims based on alleged oral contracts to make wills is constitutionally sufficient to justify the Legislature's making our statute of frauds applicable to all such contracts sought to be enforced against such estates. (See *Rubin* v. *Irving Trust Co.,* 305 N.Y. 288, 298 [113 N.E.2d 424] ; *Emery* v. *Burbank,* 163 Mass. 326-329 [39 N.E. 1026, 47 Am.St.Rep. 456, 28 L.R.A. 57].) The Legislature, however, is ordinarily concerned with enacting laws to govern purely local transactions, and it has not spelled out the extent to which the statute of frauds is to apply to a contract having substantial contacts with another state. Accordingly, we must determine its scope in the light of applicable principles of the law of conflict of laws. (See *People* v. *One 1953 Ford Victoria,* 48 Cal.2d 595, 598-599 [311 P.2d 480] ; 2 Corbin on Contracts, p. 67; Currie, *Married Women's Contracts,* 25 U. Chi. L. Rev. 227, 230-231; Cheatham and Reese, *Choice of the Applicable Law,* 52 Columb. L. Rev. 959, 961.)

▮ In the present case plaintiffs were residents of Nevada, the contract was made in Nevada, and plaintiffs performed it there. If Granrud was a resident of Nevada at the time the contract was made, the California statute of frauds, in the absence of a plain legislative direction to the contrary, could not reasonably be interpreted as applying to the contract even though Granrud subsequently moved to California and died here. (See *McCabe* v. *Bagby,* 186 F.2d 546, 550.) The basic policy of upholding the expectations of the parties by enforcing contracts valid under the only law apparently applicable would preclude an interpretation of our statute

of frauds that would make it apply to and thus invalidate the contract because Granrud moved to California and died here. Such a case would be analogous to *People* v. *One 1953 Ford Victoria,* 48 Cal.2d 595 [311 P.2d 480], where we held that a Texas mortgagee of an automobile mortgaged in Texas did not forfeit his interest when the automobile was subsequently used to transport narcotics in California although he had failed to make the character investigation of the mortgagor required by California law. A mortgagee entering into a purely local transaction in another state could not reasonably be expected to take cognizance of the law of all other jurisdictions where the property might possibly be taken, and accordingly, the California statute requiring an investigation to protect his interest could not reasonably be interpreted to apply to such out-of-state mortgagees. Another analogy is found in the holding that the statute of frauds did not apply to contracts to make wills entered into before the statute was enacted (*Rogers* v. *Schlotterback,* 167 Cal. 35, 45 [138 P. 728]). ▪ Just as parties to local transactions cannot be expected to take cognizance of the law of other jurisdictions, they cannot be expected to anticipate a change in the local statute of frauds. Protection of rights growing out of valid contracts precludes interpreting the general language of the statute of frauds to destroy such rights whether the possible applicability of the statute arises from the movement of one or more of the parties across state lines or subsequent enactment of the statute. (See Currie and Schreter, *Unconstitutional Discrimination in the Conflict of Laws: Privileges and Immunities,* 69 Yale L.J. 1323, 1334.)

▪ In the present case, however, there is no finding as to where Granrud was domiciled at the time the contract was made. Since he had a bank account in California at that time and died a resident here less than two years later it may be that he was domiciled here when the contract was made. Even if he was, the result should be the same. The contract was made in Nevada and performed by plaintiffs there, and it involved the refinancing of obligations arising from the sale of Nevada land and secured by interests therein. Nevada has a substantial interest in the contract and in protecting the rights of its residents who are parties thereto, and its policy is that the contract is valid and enforcible. California's policy is also to enforce lawful contracts. That policy, however, must be subordinated in the case of any contract that does not meet the requirements of an applicable statute of

frauds. In determining whether the contract herein is subject to the California statute of frauds, we must consider both the policy to protect the reasonable expectations of the parties and the policy of the statute of frauds. (See Cheatham and Reese, *Choice of the Applicable Law*, 52 Columb. L. Rev. 959, 978-980.) It is true that if Granrud was domiciled here at the time the contract was made, plaintiffs may have been alerted to the possibility that the California statute of frauds might apply. Since California, however, would have no interest in applying its own statute of frauds unless Granrud remained here until his death, plaintiffs were not bound to know that California's statute might ultimately be invoked against them. Unless they could rely on their own law, they would have to look to the laws of all of the jurisdictions to which Granrud might move regardless of where he was domiciled when the contract was made. We conclude, therefore, that the contract herein does not fall within our statute of frauds. (See 2 Corbin on Contracts, p. 76; Lorenzen, *The Statute of Frauds and the Conflict of Laws*, 32 Yale L.J. 311, 338; Ehrenzweig, *The Statute of Frauds in the Conflict of Laws*, 59 Columb. L. Rev. 874; Currie and Schreter, *Unconstitutional Discrimination in the Conflict of Laws: Equal Protection*, 28 U. Chi. L. Rev. 1, 51.) Since there is thus no conflict between the law of California and the law of Nevada, we can give effect to the common policy of both states to enforce lawful contracts and sustain Nevada's interest in protecting its residents and their reasonable expectations growing out of a transaction substantially related to that state without subordinating any legitimate interest of this state.

The judgment is reversed.

Gibson, C. J., Schauer, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.