[Civ. No. 35171. First Dist., Div. Four. May 20, 1975.]

WILLIAM H. ROBERTS, Plaintiff and Appellant, v.
HOME INSURANCE INDEMNITY COMPANY et al.,
Defendants and Respondents.

**COUNSEL**

Glen L. Moss for Plaintiff and Appellant.

Low, Ball & Lynch and David R. Vogl for Defendants and Respondents.

**OPINION**

**CHRISTIAN, J.**—William H. Roberts appeals from an order of the Alameda County Superior Court quashing service of summons and dismissing his complaint for personal injuries. Appellant, who is domiciled in California, brought the present action against the Captain Shreve Hotel, of Shreveport, Louisiana, claiming that he suffered personal injuries as a result of negligent maintenance of the hotel.

Appellant also sued respondent Home Insurance Company, the hotel's liability insurance carrier, under a Louisiana statute which permits an injured party to sue directly the insurer of the alleged tortfeasor. (La.Rev.Stats. § 22:655.)[1]

■ Both respondents moved to quash service of summons on the ground that effective service had not been made (Code Civ. Proc., § 418.10) and to dismiss the action on the ground that direct action against the insurer was "prohibited by statute"; the motions were granted. The record on appeal does not show that service was effected upon either respondent, bringing them within the court's jurisdiction. It is appellant's responsibility to present a record from which we can determine whether the order appealed from was erroneous (*Taliaferro* v. *Davis* (1963) 220 Cal.App.2d 793 [34 Cal.Rptr. 120]); failure to do so results in affirmance (*Utz* v. *Aureguy* (1952) 109 Cal.App.2d 803 [241 P.2d 639]). Since appellant has failed to provide this court with such a record, the order must be affirmed.

[1]Section 655: "No policy or contract of liability insurance shall be issued or delivered in this state, unless it contains provisions to the effect that the insolvency or bankruptcy of the insured shall not release the insurer from the payment of damages for injuries sustained or loss occasioned during the existence of the policy, and any judgment which may be rendered against the insured for which the insurer is liable which shall have become executory, shall be deemed prima facie evidence of the insolvency of the insured, and an action may thereafter be maintained within the terms and limits of the policy by the injured person, or his or her survivors mentioned in Revised Civil Code Article 2315, or heirs against the insurer. The injured person or his or her survivors or heirs hereinabove referred to, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy; and such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido, in the parish in which the accident or injury occurred or in the parish in which an action could be brought against either the insured or the insurer under the general rules of venue prescribed by Art. 42, Code of Civil Procedure. This right of direct action shall exist whether the policy of insurance sued upon was written or delivered in the State of Louisiana or not and whether or not such policy contains a provision forbidding such direct action, provided the accident or injury occurred within the State of Louisiana. Nothing contained in this Section shall be construed to affect the provisions of the policy or contract if the same are not in violation of the laws of this State. It is the intent of this Section that any action brought hereunder shall be subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured, provided the terms and conditions of such policy or contract are not in violation of the laws of this State.

"It is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons, his or her survivors or heirs, to whom the insured is liable; and that it is the purpose of all liability policies to give protection and coverage to all insureds, whether they are named insured or additional insureds under the omnibus clause, for any legal liability said insured may have as or for a tort-feasor within the terms and limits of said policy. As amended Acts 1962, No. 471, § 1."

■ Appellant's failure to perfect jurisdiction in the first attempt does not necessarily mean, however, that jurisdiction could never be obtained. Until the action becomes subject to dismissal for failure to prosecute (Code Civ. Proc., §§ 581a, 583), appellant is entitled to attempt to perfect the court's jurisdiction by obtaining valid service. Therefore, dismissal of the action was not justified by any defect of service.

■ Respondent Home Insurance Company was dismissed from the action on the additional theory that a direct action against an insurer cannot be brought in California on the basis of the Louisiana direct action statute. Defending the judgment of dismissal, respondent argues that (1) California law prohibits the maintenance of an action against an insurer until a judgment has been obtained against the insured, and (2) the Louisiana direct action statute is procedural in nature and therefore not applicable in foreign proceedings.

In arguing that California law prohibits the maintenance of a direct action against an insurer, respondent relies on Insurance Code section 11580,[2] *Van DerHoof* v. *Chambon* (1932) 121 Cal.App. 118 [8 P.2d 925], and *Spencer* v. *State Farm Mut. Auto. Ins. Co.* (1957) 152 Cal.App.2d 797 [313 P.2d 900]. Contrary to respondent's contention, section 11580 does not prohibit direct actions against insurers; it only requires that liability insurance policies issued in California *allow* an action against the carrier once a judgment has been obtained against the insured. The statute is silent as to a direct action against the insurer before judgment is obtained against the insured. (See *Turner* v. *Evers* (1973) 31 Cal.App.3d Supp. 11

---

[2]Insurance Code section 11580: "A policy insuring against losses set forth in subdivision (a) shall not be issued or delivered to any person in this State unless it contains the provisions set forth in subdivision (b). Such policy, whether or not actually containing such provisions, shall be construed as if such provisions were embodied therein.

"(a) Unless it contains such provisions, the following policies of insurance shall not be thus issued or delivered:

(1) Against loss or damage resulting from liability for injury suffered by another person other than a policy of workmen's compensation insurance.

(2) Against loss or damage to property caused by draught animals or any vehicle, and for which the insured is liable.

(b) Such policy shall not be thus issued or delivered to any person in this State unless it contains all the following provisions:

(1) A provision that the insolvency or bankruptcy of the insured will not release the insurer from the payment of damages for injury sustained or loss occasioned during the life of such policy.

(2) A provision that whenever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment."

[107 Cal.Rptr. 390].) That silence does not imply a legislative policy against allowing a claimant to pursue any rights which may have been created by contract or by another state's direct action statute. Moreover, respondent's contention is unsound for a more fundamental reason: section 11580 only applies to policies issued in California. According to respondent's own affidavit, the policy in question was issued in Louisiana; section 11580 is therefore not applicable.

The cases cited by Home Insurance do not support the claim that suit under the Louisiana direct action statute is "violative of the law of California." *Van DerHoof* v. *Chambon, supra,* 121 Cal.App. 118, *Spencer* v. *State Farm Mut. Auto. Ins. Co. supra,* 152 Cal.App.2d 797, and other decisions (see *Rupley* v. *Huntsman* (1958) 159 Cal.App.2d 307 [324 P.2d 19]; *Chamberlin* v. *City of Los Angeles* (1949) 92 Cal.App.2d 330 [206 P.2d 661]; *Girard* v. *Commercial Standard Ins. Co.* (1944) 66 Cal.App.2d 483 [152 P.2d 509]) hold that in the absence of a special provision in the policy, or a statute, authorizing a direct action, an action against the insurer must await a judgment against the insured. There is no holding indicating that a direct action may not be maintained against respondent Home Insurance Company; on the contrary, the cases support the maintenance of such an action if it is authorized by the Louisiana statute and by California choice-of-law rules.

■ Respondent also contends that California should choose not to apply the Louisiana direct action statute. The argument is that courts generally apply the procedural law of the forum, and that the Louisiana direct action statute is procedural in nature. It is true that while courts generally enforce substantive rights created by the laws of other jurisdictions, procedural laws of the forum state are to be applied. (*Bernkrant* v. *Fowler* (1961) 55 Cal.2d 588 [12 Cal.Rptr. 266, 360 P.2d 906]; *Grant* v. *McAuliffe* (1953) 41 Cal.2d 859 [264 P.2d 944, 42 A.L.R.2d 1162]; Rest.2d, Conflict of Laws, § 122.) Whether a particular question is one of substance or procedure is determined by forum law. (*St. Louis-San Francisco Ry. Co.* v. *Superior Court* (1969) 276 Cal.App.2d 762 [81 Cal.Rptr. 705].) ■ No California court has determined whether the Louisiana direct action statute creates a substantive right. But several other jurisdictions have considered the problem.

Louisiana courts have variously characterized the statute as substantive or procedural, depending on the context in which the issue arose. (See Note (1939) 120 A.L.R. 855 and *Bayard* v. *Traders & General Ins. Co.* (W.D.La. 1951) 99 F.Supp. 343.) In general, early Louisiana

decisions involving insurance policies not issued in that state, which contained clauses disallowing direct actions, have construed the clauses and the statute as procedural in order to sustain the application of the statute and to answer insurers' contentions that the application of the statute would impair substantive contractual rights in violation of the due process clause. (*Robbins* v. *Short* (La.App. 1936) 165 So. 512; *Duncan* v. *Ashwander* (W.D.La. 1936) 16 F.Supp. 829; *Rogers* v. *American Employers' Ins. Co.* (W.D.La. 1945) 61 F.Supp. 142; see *Belanger* v. *Great American Indemnity Co.* (E.D.La. 1950) 89 F.Supp. 736; Note (1957) 31 Tulane L.Rev. 673, 674, fn. 7.) On the other hand, Louisiana courts have held that the direct action statute creates a substantive right in the injured person—a right which cannot be defeated by the failure of an insured to give his insurer timely notice of an accident. (*West* v. *Monroe Bakery, Inc.* (1950) 217 La. 189 [46 So.2d 122].) Other Louisiana decisions have held that the defenses of coverture (*Edwards* v. *Royal Indemnity Co.* (1935) 182 La. 171 [161 So. 191]), and charitable and sovereign immunity (*Lusk* v. *United States Fidelity & Guaranty Co.* (La.App. 1941) 199 So. 666; *Musmeci* v. *American Automobile Insurance Company* (La.App. 1962) 146 So.2d 496; Comment (1961) 22 La.L.Rev. 243, 246) are personal to an insured and cannot be raised by an insurer in a direct action.

In *Lumbermen's Casualty Co.* v. *Elbert* (1954) 348 U.S. 48 [99 L.Ed. 59, 75 S.Ct. 151], the United States Supreme Court held that the Louisiana direct action statute creates an independent cause of action against an insurer. Subsequent federal decisions have characterized the statute as creating a substantive right enforceable in foreign proceedings. (*Collins* v. *American Automobile Insurance Company* (2d Cir. 1956) 230 F.2d 416; *Shapiro* v. *Aetna Casualty and Surety Company* (N.D.Ga. 1963) 234 F.Supp. 41; *Chambless* v. *National Industrial Laundries* (E.D.Tex. 1957) 149 F.Supp. 504; Note (1961) 35 Tulane L.Rev. 637, 638.) While some courts have considered the statute as merely procedural (*McArthur* v. *Maryland Cas. Co.* (1939) 184 Miss. 663 [186 So. 305, 120 A.L.R. 846]; *Penny* v. *Powell* (1961) 162 Tex. 497 [347 S.W.2d 601]), the commentators have criticized such a procedural characterization (Ehrenzweig, Conflicts in a Nutshell (2d ed. 1970) § 67-3; Speidel, *Extraterritorial Assertion of the Direct Action Statute: Due Process, Full Faith and Credit and the Search for Governmental Interest* (1958) 53 Nw. U.L.Rev. 179, at pp. 197 and 204; Note (1960) 74 Harv.L.Rev. 357 at p. 377; Comment (1957) 57 Colum.L.Rev. 256 at pp. 259 and 272; Note (1961) 35 Tulane L.Rev. 637, 639).

An important consideration in determining whether the law of another jurisdiction should be applied by California courts is whether such an application is reasonably to be expected by litigants (see *Bernkrant* v. *Fowler* (1961) 55 Cal.2d 588 [12 Cal.Rptr. 266, 360 P.2d 906]; *People* v. *One 1953 Ford Victoria* (1957) 48 Cal.2d 595 [311 P.2d 480]); this consideration is particularly important in determining whether a foreign statute is substantive or procedural (Rest.2d Conflict of Laws, § 122, com). In light of the Louisiana statute requiring insurers doing business in that state to consent to be sued in direct actions (La.Rev. Stats. 22:983)[3] and numerous holdings in other jurisdictions that the direct action statute creates a substantive right and transitory cause of action, insurers must reasonably expect to defend a direct action in any state which may obtain jurisdiction. Therefore a substantive characterization in this case is consistent with respondent's reasonable expectations. We hold that the Louisiana statute creates a substantive right which is enforceable in a direct action brought in a California court.

It might be claimed that the venue provision in the direct action statute does not permit direct action in courts of other states. (See *Morton* v. *Maryland Cas. Co.* (1958) 4 N.Y.2d 488 [176 N.Y.S.2d 329, 151 N.E.2d 881]; *Pearson* v. *Globe Indemnity Company* (5th Cir. 1962) 311 F.2d 517.) The better view is that the venue provision applies only to cases brought in Louisiana. (*Collins* v. *American Automobile Insurance Company, supra,* 230 F.2d 416; *Chambless* v. *National Industrial Laundries, supra,* 149 F.Supp. 504; Comment (1957) 21 Albany L.Rev. 46, 47-48; Comment (1957) 57 Colum.L. Rev. 256, 260-262; Note (1957) 31 Tulane L.Rev. 673; Speidel, *Extraterritorial Assertion of the Direct Action Statute: Due Process, Full Faith and Credit and the Search for Governmental Interest* (1958) 53 Nw. U.L.Rev. 179, 196-197.)

Application of the Louisiana direct action statute in this case is supported by considerations of policy. Allowing appellant to bring a direct action in this state provides to California citizens a fair, equal, and convenient forum for adjudication of claims. It also advances the uniform enforcement of rights acquired under foreign law (*Alaska*

---

[3]Louisiana Revised Statutes, section 22:983: "E. No certificate of authority to do business in Louisiana shall be issued to a foreign or alien liability insurer until such insurer shall consent to being sued by the injured person or his or her heirs in a direct action as provided in R.S. 22:655, whether the policy of insurance sued upon was written or delivered in the state of Louisiana or not, and whether or not such policy contains a provision forbidding such direct action, provided that the accident or injury occurred within the state of Louisiana. The said foreign or alien insurer shall deliver to the commissioner of insurance as a condition precedent to the issuance of such authority, an instrument evidencing such consent. Amended and reenacted Acts 1958, No. 125."

*Packers Assn.* v. *Indus. Acc. Com.* (1934) 1 Cal.2d 250 [34 P.2d 716]; Goodrich, *Public Policy in the Law of Conflicts* (1930) 36 W.Va.L.Q. 156; Comment (1957) 57 Colum.L.Rev. 256, 262.)

Moreover, application of the Louisiana statute is consistent with the policy underlying California insurance law. Louisiana courts have held that the direct action statute "expresses the public policy . . . that an insurance policy against liability is not issued primarily for the protection of the insured but for the protection of the public." (*Davies* v. *Consolidated Underwriters* (1942) 199 La. 459 [6 So.2d 351]; see *Buxton* v. *Midwestern Ins. Co.* (W.D.La. 1952) 102 F.Supp. 500.) California Insurance Code section 11580, requiring that insurance policies issued in California allow a direct action against the insurer once a judgment has been obtained against the insured, marks a similar departure from the common law rule. Both the Louisiana and California statutes express a similar concern, albeit to different degrees: an injured person has an interest in an insured tortfeasor's insurance contract which should be protected. Application of the Louisiana statute here would serve to implement this common underlying policy.

■ It might be argued that Evidence Code section 1155, which provides that evidence of insurance coverage is inadmissible to prove negligence or wrongdoing, indicates a governmental policy against allowing a direct action against an insurer (see *Morton* v. *Maryland Cas. Co.* (1955) 1 App.Div.2d 116 [148 N.Y.S.2d 524]; Note (1957) 31 Tulane L.Rev. 673, 674). However, this rule of evidence, which is designed to prevent prejudicial use of evidence of insurance in an action brought against the insured, does not reflect an intention to defeat a right of direct action created by contract or by statute. (See *Van DerHoof* v. *Chambon, supra,* 121 Cal.App. 118; *Spencer* v. *State Farm Mut. Auto. Ins. Co., supra,* 152 Cal.App.2d 797; see also *Collins* v. *American Automobile Insurance Company, supra,* 230 F.2d 416; Comment (1957) 57 Colum.L. Rev. 256, 262-263; Comment (1971) 59 Cal.L.Rev. 525.)

The order quashing service of summons is affirmed; the judgment of dismissal is reversed. The parties will bear their own costs.

Caldecott, P. J., and Rattigan, J., concurred.