Myra STRASSBERG, Plaintiff-Appellant,

v.

NEW ENGLAND MUTUAL LIFE
INSURANCE COMPANY,
Defendant-Appellee.

No. 76–3390.

United States Court of Appeals,
Ninth Circuit.

March 13, 1978.

Gayle R. Posner (argued), of Blumberg &
Zommick, Long Beach, Cal., for plaintiff-
appellant.

Peter A. Menjou (argued), of Meserve,
Mumper & Hughes, Los Angeles, Cal., for
defendant-appellee.

Before HUFSTEDLER and TRASK, Circuit Judges, and JAMESON,* District Judge.

PER CURIAM:

Strassberg, the named beneficiary of an insurance policy on the life of her late husband, brought this action in state court in California to recover the amount of the policy from the insurer, New England Mutual Life Insurance Company ("New England"). New England removed the case to federal court on the basis of diversity. Following trial, judgment was entered for New England. Strassberg appeals.

On June 15, 1971, Strassberg's late husband, Peter, received a visit in his home in New Jersey from a New England agent working out of New York City. Peter applied for a $25,000 life insurance policy, which was to be a term policy for the first two years and thereafter an ordinary life policy. The annual premium was to be $108.25 for the first and second years, and $441.75 thereafter. Peter named Strassberg as the beneficiary. He paid the New England agent a $39.00 deposit as an advance on the first premium. New England issued Peter the policy and mailed it to him from its home office in Massachusetts to the insured's address in New Jersey. Peter mailed the balance of the first year's premium to New England's agent in New York City.

In November, 1971, the Strassbergs moved permanently from New Jersey to California. When the due date arrived for the second year's premium on June 15, 1972, Peter mailed a check from his California residence to the New York office. The amount of the check, together with his accrued dividend, satisfied the premium payment for the second year. In May or June of 1973, New England sent Peter a notice of the premium due on June 15, 1973, in the amount of $441.75. After corresponding with New England's New York office, the Strassbergs decided not to pay any further

premiums. According to the policy's non-forfeiture provisions, the accrued dividend was automatically applied to the purchase of term insurance for the benefit of the insured. Thus, Peter's life was insured until September 25, 1973. He died on October 7, 1973.

If California law applies, Strassberg is entitled to nothing because the policy had lapsed for non-payment of the premium. Strassberg argues that New York, rather than California law should be applied, because under New York law a policy remains in effect for one year after default unless the insurer, within from 15 to 45 days before the premium's due date, gives the insured notice that if default continues, the policy will lapse. (New York Ins. Law § 151.) The district court rejected the contention and concluded that "by reason of the significant relationship between the beneficiary and the insured and California and the dominant interest of California in this matter, California law is applicable." Strassberg argues on appeal that the district court erred in refusing to apply New York law and that New England has failed to sustain its burden of proving that the notice required by New York law was given.

■ The district court, exercising diversity jurisdiction, was obliged to apply the law of the State of California, including the choice of law rules of the forum state. (*Klaxon Co. v. Stentor Elec. Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).) California conflicts law has developed significantly since the original enactment of California Civil Code § 1646, which in substance provides that a contract is to be interpreted according to the law and usage of the place where it is to be performed, or, if no place of performance is indicated, according to the law of the place where the contract was made.

■ Under the leadership of former Chief Justice Roger Traynor, the California law moved away from a mechanical choice of law process to employ the "governmental

---

* Honorable William J. Jameson, Senior United States District Judge, District of Montana, sitting by designation.

interest analysis" approach. Before a California court makes a choice of law, it will first consider the actual stake that the potentially concerned states have in the litigation. (*Hurtado v. Superior Court,* 11 Cal.3d 574, 114 Cal.Rptr. 106, 522 P.2d 666 (1974); *Reich v. Purcell,* 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967).) The court will examine the decisional rule of a sister state and will determine whether the state interests the rule is designed to protect will be significantly furthered by its application to the case at hand. Generally, the preferernce is to apply California law, rather than choose the foreign law as a rule of decision. (*Hurtado v. Superior Court, supra,* 114 Cal. Rptr. at 110, 522 P.2d at 670.) Therefore, if application of a foreign decisional rule will not significantly advance the interests of the foreign state, a California court will conclude that the conflict is "false" and apply its own law. (*Id.* at 110–11, 522 P.2d at 670–71; *Reich v. Purcell, supra,* 63 Cal. Rptr. at 35, 432 P.2d at 731.) Only if both California and the foreign state have a strong interest in the application of their own law to the controversy will a true conflict be said to exist, requiring an examination of the "comparative impairment" to each states' interest of the choice of one rule over the other. (*Bernhard v. Harrah's Club,* 16 Cal.3d 313, 128 Cal.Rptr. 215, 218–23, 546 P.2d 719, 722–27 (1976); *Bernkrant v. Fowler,* 55 Cal.2d 588, 12 Cal.Rptr. 266, 360 P.2d 906 (1961); *People v. One 1953 Ford Victoria,* 48 Cal.2d 595, 311 P.2d 480 (1957).) This approach is applied to contracts cases as well as in the more familiar tort context. (*See Bernkrant v. Fowler, supra; Dixon Mobile Homes, Inc. v. Walters,* 48 Cal. App.3d 964, 122 Cal.Rptr. 202 (1975).)

■ As we have pointed out, Peter took out the policy when he and Strassberg were residents and domiciliaries of New Jersey. He paid the initial premium in part by his deposit given to the New England agent in New Jersey. The policy was mailed from the home office in Massachusetts to Peter's address in New Jersey. The Strassbergs later became domiciliaries of California. The only connection of New York with the entire set of transactions was that New England's agent was situated in New York

City and New York City was also the place in which premium payments were received. New York's insurance statute expresses a state policy of protecting New York residents and domiciliaries from the risk that through a late payment, a New York insured might forfeit a life insurance policy without knowing that he or she had incurred that risk. The Strassbergs are not members of the class for whose benefit Section 151 was intended, namely, New Yorkers.

■ The New York statute applies, in terms, only to insurance policies which are "delivered or issued for delivery in this state" N.Y. Ins. Law § 151(1) (McKinney Supp. 1977) and states that its provisions do no apply to policies "delivered outside this state." *Id.* § 151(6). There exists a long line of authority in the state and federal courts which holds that the non-forfeiture provisions of section 151 apply only to policy holders who live in New York State at the time the notice required by the statute would have to be issued. *Mutual Life Ins. Co. v. Hill,* 193 U.S. 551, 554, 24 S.Ct. 538, 48 L.Ed. 788 (1904) (predecessor statute); *Mutual Life Ins. Co. v. Cohen,* 179 U.S. 262, 264–70, 21 S.Ct. 106, 45 L.Ed. 181 (1900); *Mutual Life Ins. Co. v. Phinney,* 178 U.S. 327, 20 S.Ct. 906, 44 L.Ed. 1088 (1900); *McCampbell v. N.Y. Life Ins. Co.* (5th Cir. 1923) 288 F. 465, 470, *cert. den.* 262 U.S. 759, 43 S.Ct. 705, 67 L.Ed. 1219 (1923); *Kaplan v. The Equitable Life Assur. Soc. of the U.S.,* 177 Misc. 792, 795, 31 N.Y.S.2d 972 (1940), *aff'd* 261 App.Div. 1067, 27 N.Y. S.2d 780 (1941); *Copp v. New York Life Ins. Co.,* 154 Misc. 33, 34–35, 276 N.Y.S. 353 (1934), *aff'd,* 244 App.Div. 712, 279 N.Y.S. 972 (mem.); *Brassell v. John Hancock Mutual Life Ins. Co.,* 134 Misc. 274, 235 N.Y.S. 195 (1929); *Napier v. Bankers' Life Ins. Co.,* 51 Misc. 283, 289–90, 100 N.Y.S. 1072 (1906). The Strassberg's policy was not delivered in New York—rather, it was mailed to the insured in New Jersey from the company's Massachusetts headquarters. It does not fall in terms within the current protections of the statute, and in similar circumstances a New York court held that its predecessor statute afforded no protection to the beneficiary. *Brassell v. John Hancock Mutual*

*Life Ins. Co., supra.* No New York interest is abridged by the failure of the federal district court, sitting as a California court, to apply section 151 to this case because New York courts hold the statute to be inapplicable to such extra-territorial events. (*See Hurtado v. Superior Court, supra,* 114 Cal.Rptr. at 111, 522 P.2d at 671 (where "it appears that the foreign state . . . has no interest whatsoever in having its own law applied, California as the forum should apply California law."); *see also Bernhard v. Harrah's Club, supra,* 128 Cal. Rptr. at 218–19, 546 P.2d at 722–23.)[1] We are therefore persuaded that a California court would term the present situation a false conflict and apply its own law by which Strassberg is barred from recovering under the policy.

AFFIRMED.

---

1. Strassberg's counsel argued vigorously that New York had an interest in applying its law for the benefit of nonresidents doing business with New York insurance agents, to enhance the business of insurance within the state. Counsel cited only the case of *Intercontinental Planning Limited v. Daystrom, Inc.,* 24 N.Y.2d 372, 300 N.Y.S.2d 817, 248 N.E.2d 576 (1969). The *Daystrom* case involved the application of New York conflicts law to the question whether a New Jersey or New York statute of frauds provision should be applied to an oral contract for a finders's fee for assistance in acquiring a New Jersey corporation. A California court would not use New York choice of law rules to resolve the present case, nor is the discussion in *Daystrom* respecting New York interests in the application of its own statute of frauds to a case pending in its own courts relevant to its interests in the extra-territorial application of section 151. As to that, we look to its courts' interpretation of that statute. They have said "the Legislature of the State may be deemed to have intended to provide only for the protection of the rights of policyholders within this State" in enacting section 151. *Napier v. Bankers' Life Ins. Co., supra,* 51 Misc. at 290, 100 N.Y.S. 1072, 1076.