**Frank P. DENNY, Plaintiff,**

v.

**The AMERICAN TOBACCO COMPANY and Sunshine Biscuits, Inc., Defendants.**

**No. 51305.**

United States District Court
N. D. California.

Jan. 14, 1970.

220

Owen M. Panner, of McKay, Panner, Johnson, Marceau & Karnopp, Bend, Or., and W. Edmund Parent, II, Santa Barbara, Cal., for plaintiff.

Pillsbury, Madison & Sutro, San Francisco, Cal., for defendants, with James Michael, George A. Sears, Robert M. Westberg and Gary H. Anderson, San Francisco, Cal., appearing.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

WOLLENBERG, District Judge.

This is a diversity suit brought by a California plaintiff against the American Tobacco Company, a New Jersey corporation, and Sunshine Biscuits, Inc., which is incorporated under the laws of the State of Delaware. Sunshine is a wholly owned subsidiary of American; both companies are headquartered and have their principal place of business in New York.

Plaintiff's claim arises from a letter, dated June 8, 1967, which he sent to Mr. R. H. Schust, Vice-President in charge of sales for Sunshine. The letter informed Sunshine that Bell Brand Foods, a California-based snack-food company, "might be for sale 'if the right people come along'". Plaintiff added that he would fill in the details if Sunshine so desired, and that Sunshine should give him a call if it were indeed interested in pursuing the matter. No answer was sent to this letter; nor was any call ever made to plaintiff relating to the information therein. Sunshine did, however, acquire Bell in December, 1968, and it is plaintiff's contention that his services were the procuring cause of this acquisition, and that he is entitled to recovery *quantum meruit*. Defendants move for summary judgment on alternate grounds: first, that the action is barred by the New York Statute of Frauds; and, second, that there is no genuine issue as to any material fact. Since the court finds the Frauds point to be well taken, it does not reach the second ground of the motion.

■ There seems to be little contest that the New York Statute of Frauds prohibits recovery of a "finder's fee" in connection with a corporate acquisition, absent a writing signed by the party against whom the fee is claimed. New York General Obligations Law, McKinney's Consol.Laws, c. 24-a, § 5–701 (10). Nor is it denied that this law has been applied by the New York courts to bar recovery, *quantum meruit*, such as is demanded herein. Minichiello v. Royal Business Funds Corporation, 18 N.Y.2d 521, 277 N.Y.S.2d 268, 223 N.E.2d 793, 795, 24 A.L.R.3d 1154 (1966); cert. den. 389 U.S. 820, 88 S.Ct. 41, 19 L.Ed.2d 72 (1967). What is very much in question, however, is whether it is New York's law which is to be applied to the facts of this case.

■■ In diversity cases, the federal courts are to apply the substantive law of the states. The Statute of Frauds, having as it does a definite bearing upon the outcome of a case such as this, is considered "substantive" for the purpose of this rule. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Byrd v. Blue Ridge Rural Electric Co., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958); Stahlman v. National Lead Co., 5 Cir., 318 F.2d 388 (1963).

■ It is not always clear, however, which state's version of the Statute of Frauds is to be applied in a given situation, and when a federal court sitting in a diversity case finds itself faced with an apparent conflict between the relevant laws of two or more states, it must resolve the conflict in accord with the conflict of laws principles developed by the courts of the state in which it sits. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). This court must, for example, refer itself to the conflicts principles developed by the courts of California, and when it does so, it finds the rules offered by the parties herein to be inappropriate.

Both parties cite Van Rensselaer v. General Motors Corporation, D.C., 223 F.Supp. 323 (1962), which in turn relies upon the philosophy of the first Restatement, Conflict of Laws (1934). Defendant, pointing out that any "acceptance" of plaintiff's proferred information would have occurred in New York, relies on the ancient rule that the "place of acceptance" generally determines the law applicable to a contract. Plaintiff in turn claims that the crucial point is that

the *benefit* of his information was received in California, and that this state is in effect the "place of performance" of the implied obligation herein.[1] Restatement I, Conflict of Laws, §§ 452–453.

■ California law, however, has for some time left behind the principles of the first Restatement, and, in contract actions such as this, asks first whether the alleged agreement has "substantial contacts" with more than one state, and whether, given such multi-state contacts, the legitimate governmental interests of one state are more crucially involved than are the interests of other states involved. Bernkrant v. Fowler, 55 Cal.2d 588, 12 Cal.Rptr. 266, 360 P.2d 906 (1961); People v. One 1953 Ford Victoria, 48 Cal.2d 595, 311 P.2d 480 (1957).

■ The approach taken by the California court in Bernkrant, *cit. supra*, has attracted considerable attention from both scholars and jurists. See, for example, Cramton and Currie, Conflict of Laws, pp. 302ff. (1968); Note, 49 Calif. L. Rev. 963 (1961); Ideal Structures Corp. v. Levine Huntsville Development Corp., 5 Cir., 396 F.2d 917 (1968); Lester v. Aetna Life Insurance Co., D.C., 295 F.Supp. 1208 (1968). It marked a clean break with the first Restatement, and a considerable departure from the "center of gravity" approach of the second Restatement, Conflict of Laws (1956–68). This Court, therefore, in considering the applicability to a transaction of two versions of the Statute of Frauds, must not only consider the "contacts" between New York, California, and the transaction, but must also ask itself whether application of the varying statutes involved to the facts of the case at hand will further the legitimate policy interests of the states. Only if two or more states are found to have their policies at stake is there said to be a "true conflict", in which case the policy of the forum, at least in theory, will prevail. See Traynor, Is This Conflict Really Necessary? in 37 Texas L.Rev. 657 (1959).

Turning then to the case at bar, we find it clear that the relationship sued on here involved both New York and California to a substantial degree. Plaintiff's letter was sent to New York, and invited a response which could be reasonably expected to emanate from New York. The "use" allegedly made of plaintiff's information took the form of negotiations in both New York and California, and a final acquisition agreement which was made subject to New York law. The "subject matter" of the negotiations was, of course, a corporation which had its principal place of business in California. A practitioner of the second Restatement would be hard put to say which of these states had "the most significant relationship" with the "contract" involved herein.

■ At first glance, it might also appear that both states have an interest in applying their own versions of the Statute of Frauds. New York's interest is clear, and was spelled out in Minichiello v. Royal Business Funds Corp., *cit. supra*:

> "The Legislature amended subdivision 10 to clearly apply the section to finders and to preclude any recovery in *quantum meruit.* * * * The nature of the transactions is such that, in the absence of the requirement of a writing, unfounded and multiple claims for commissions are frequently asserted * * * to allow recovery for the reasonable value of these services is to substantially defeat the writing requirement." Id., 277 N.Y. S.2d at 271, 223 N.E.2d at 795.

Protection from unfounded claims is, then, the general policy behind this Statute of Frauds. Defendants, as corporate "residents" of New York, with their principal place of business in that state, had a right to rely on the Statute, and, in fact, the record indicates that their

---

1. California's Statute of Frauds does not appear to bar recovery of a "finder's fee" in an action *quantum meruit.*

reasonable expectation was that no finders fee would be payable in connection with their purchase of Bell Brand Foods.[2]

■ California's interest in a contract valid under its Statute of Frauds, though invalid under the Statute of a foreign state, is primarily in upholding the reasonable expectations of its residents who are parties to agreements that would be valid and enforceable absent any Frauds restriction. Bernkrant v. Fowler, cit., 55 Cal.2d at p. 594, 12 Cal.Rptr. 266, 360 P.2d 906. We do not find that interest to be at stake here. Plaintiff was indeed a resident of California when he wrote to defendants. But plaintiff, whose sagacity and business acumen the record makes clear, sent information to a New York corporation, and himself specified that the corporation should answer—from New York— only if it were interested in pursuing the matter. Plaintiff has called this letter "just another shot in the dark" and indeed it was. On one hand, as an astute businessman, he could well be said to have been on notice that any dealings he had with defendants would be subject to New York law. On the other hand, and more importantly from the standpoint of Bernkrant, there was no clear contract, oral or written, between the parties herein. In Bernkrant, the oral contract between the parties, and performance by the plaintiffs, was clear. The agreement took place in Nevada, whose Statute of Frauds did not apply; hence the expectations of both parties were that they would be bound. This is not the case here: a letter/offer was sent to a corporation headquartered in a state whose law barred finders' fees without written agreement. No reply to the letter was sent or received, though the offer had provided that acceptance should be indicated by some sort of communication. Plaintiff, upon these undisputed facts, could not have had the kind of expectations of which the Court was so solicitous in Bernkrant and analogous cases.[3]

■ In short, we find that under several alternative conflicts theories, New York's law could, and probably would be applied by the courts of California. Under the "center of gravity" approach, taken by the second Restatement, New York might well be said to have the most significant contacts with the transaction here: the offer was sent to New York, invited a New York acceptance, and the benefits allegedly derived from the offer accrued at least as much in New York as in California. Secondly, insofar as these parties, all with relatively equal bargaining power, could be said to have chosen any state's law as applicable to their dealings, that law would be the law of New York. Finally, taking the "interest analysis" approach endorsed by Justice Traynor, it seems that New York's interest is clear in protecting its residents from just the sort of claim as is involved here. California's interest in protecting the reasonable expectations of its residents is, however, much less apparent. Whether

2. Affidavit of James L. Bauchat, Member, Board of Directors, and President (1968–69) of Sunshine Biscuits, Inc.

3. The issues raised herein are obviously far from resolved, either by scholars or by judges. One noteworthy approach, for example, would seem at first blush to run counter to the analysis herein. Professor Ehrenzweig has argued that the "true rule" behind conflicts decisions dealing with the Statute of Frauds is that the validity of contracts will be upheld whenever possible. See Ehrenzweig, The Statute of Frauds in the Conflict of Laws: Basic Rule of Validation, 59 Columbia L. Rev. 874 (1959). However, the applicability of the rule of validation depends upon the maxim that "contracting parties intend to be bound by their obligations". Id. at 874. Thus the court, if convinced that there was indeed an agreement, untainted by fraud or perjury, will have "no sympathy for a party whose only excuse for repudiation is lack of a statutory formality". Id. at 876. The Court's attitude might well be different if both parties admit that there was no acceptance of an unsolicited offer, and where the undisputed evidence is that the defendant reasonably assumed that there was no contract between it and plaintiff.

it be said that there is no "true conflict" or simply that California's legislature did not intend its policy to reach cases like this, the effect is the same, and New York's law is applicable.

Accordingly, defendants' motion for summary judgment is hereby granted.