**Norton J. LEHMAN, Plaintiff,**

v.

**DOW JONES & COMPANY, INC., a Corporation, Defendant.**

**No. 83 Civ. 3232 (WCC).**

United States District Court, S.D. New York.

April 3, 1985.

Kramer, Levin, Nessen, Kamin & Frankel, New York City, for plaintiff; Michael S. Oberman, David S. Frankel, New York City, of counsel.

Patterson, Belknap, Webb & Tyler, New York City, for defendant; Michael B. Mukasey, Linda Novak, New York City, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

Plaintiff Norton J. Lehman ("Lehman") brought this diversity action to recover a finder's fee from Dow Jones & Company, Inc. ("Dow Jones") for services he allegedly rendered in connection with Dow Jones's 1981 acquisition of Continental Cablevision, Inc., a cable television company. Lehman alleges six theories of liability, including breach of express contract, breach of implied contract, unjust enrichment, *quantum meruit*, fraud, and breach of confidence.

Defendant now moves for summary judgment on each of these counts arguing that: the first four contract-like claims are barred by New York's Statute of Frauds; the fraud claim is simply a contract claim in disguise, and thus also barred by the Statute of Frauds; and finally, that the breach of confidence count is wholly without merit. For the reasons stated below, defendant's motion for summary judgment is granted.

*Background*

Plaintiff Norton Lehman is a California attorney who devotes most of his professional time to work as a "finder" of corporate acquisition deals, primarily among cable television companies. Lehman Aff. at ¶¶ 1–4. His first contact with Dow Jones occurred in October 1979, when he called the company's New York offices and spoke to Warren F. Phillips, Dow Jones's chairman and chief executive officer, about whether Dow Jones might be interested in acquiring a cable company he had found. *Id.* at ¶ 7. Phillips referred Lehman to George W. Flynn, Dow Jones's senior vice-president in charge of acquisitions, who worked in the company's New Jersey offices. *Id.* Lehman called and wrote to Flynn in New Jersey about his acquisition proposal. *Id.* at ¶¶ 8–9. Lehman says that Flynn advised him that Dow Jones was not interested in the particular cable company Lehman had found, but that it was interested in acquiring other cable systems. *Id.* at ¶ 11. Lehman also avers that Flynn authorized him to find other cable companies for Dow Jones to acquire; most importantly, Lehman says Flynn stated that Dow Jones would pay Lehman a finder's fee if he procured an acquisition for it. *Id.* Lehman claims that on the basis of these representations, he began to search for promising acquisition prospects. *Id.*

Over the next two years, Lehman sent a series of letters to Dow Jones's offices in New York and New Jersey advising its officers of potential acquisition candidates. In each instance, he recited that he was "going forward" as a finder for Dow Jones on the basis of a percentage compensation formula. *Id.* at ¶¶ 13, 16, 20, 26. Dow Jones apparently never advised Lehman to stop sending these letters—in fact, in January 1981, senior officers of Dow Jones met with Lehman and representatives of an acquisition candidate to discuss a possible deal. *Id.* at ¶ 22. The transaction was aborted, *id.* at ¶ 24, but Lehman continued to contact Dow Jones periodically with other acquisition prospects.

In early September 1981, Lehman telephoned Dow Jones's New York and New Jersey offices to advise its officers that Continental Cablevision, Inc. ("Continental") was available for acquisition. *Id.* at ¶ 33. On September 11, 1981, he spoke to Frederick Harris, Dow Jones's vice-president of finance. *Id.* Lehman says he convinced Harris that Continental was a good prospect for Dow Jones, and Harris asked him to forward whatever information he had about the company. *Id.* Lehman also avers that he and Harris agreed that he would go forward on a one percent compensation formula, and that Dow Jones would keep his information confidential. *Id.*

On September 14, 1981, Lehman sent a detailed submission letter concerning Continental to Harris and other senior officials at Dow Jones. *Id.* at ¶ 35; Appendix to Defendant's Mem. in Support of Motion for Summary Judgment, Ex. 1. In that letter, Lehman stated again that he was proceeding on a one percent compensation formula, and emphasized that Dow Jones should keep the information about Continental confidential. Lehman Aff. at ¶ 35; Appendix to Defendant's Mem. in Support of Motion for Summary Judgment, Ex. 1. The next day, after receiving the letter, Harris telephoned Lehman and said that Dow Jones was not interested in the proposed acquisition. Lehman Aff. at ¶ 37.

However, on September 24, 1981, George Wiegers, a partner at Lehman Brothers (no relation to plaintiff), approached Harris and suggested that Dow Jones acquire a part interest in Continental. *Id.* at ¶ 38. Dow Jones apparently was interested in the transaction as proposed by Wiegers, because on October 22, 1981 it announced that it would purchase a $78 million interest in Continental. The deal was consummated in November 1981; plaintiff received no fees from the transaction.

It is defendant's position that Lehman did not, by his actions, procure the acquisition. Of course, plaintiff takes a different view. He believes that he may have inadvertently alerted Lehman Brothers to the availability of Continental as a possible ac-

quisition candidate. *Id.* at ¶ 38. When Dow Jones advised him that it was not interested in Continental, Lehman suggested to Continental that it investigate LIN Broadcasting Corporation as a possible suitor. *Id.* In particular, he suggested that Continental consult with F. Warren Hellman, a partner at Lehman Brothers who was familiar with both Continental and LIN Broadcasting. *See* Ex. 6 to Lehman Aff. George Wiegers, the Lehman Brothers partner who met with officers of Dow Jones on September 24, has stated that prior to this meeting he spoke with Hellman about Continental and the possibility of its acquisition by Dow Jones. *See* Appendix to Defendant's Mem. in Support of Motion for Summary Judgment, Ex. 6 at 70–74. Plaintiff argues that a trier of fact would properly infer that it was his own suggestion to Continental that it contact Hellman that caused Hellman to alert Wiegers to the availability of Continental, which ultimately led to the acquisition itself. Thus, in plaintiff's view, he did procure the transaction for Dow Jones.

In October 1982, Lehman commenced an action in the Central District of California against Dow Jones and three of its officers. Senior District Judge David W. Williams dismissed the claims against the individual defendants for lack of *in personam* jurisdiction, and transferred the remaining claims against Dow Jones to the Southern District of New York. Upon its arrival, the case was assigned to me. Dow Jones now moves for summary judgment.

*Discussion*

A. *Lehman's Contract and Quasi-contract Claims*

Dow Jones contends that the first four claims in plaintiff's complaint—those for breach of express contract, breach of implied-in-fact contract, unjust enrichment, and *quantum meruit*—are barred by New York's Statute of Frauds ("Statute"). New York General Obligation Law § 5–701(a)(10) provides that an agreement for a finder's fee is void unless that agreement is evidenced by a writing signed by the party to be charged. Here, plaintiff concedes that no writing exists that memorializes his alleged fee arrangement with Dow Jones.[1]

However, Lehman argues that the New York statute is irrelevant here because California law should be applied in this case. California law would not bar Lehman's action since it permits oral agreements for finder's fees. *See* Cal.Civ.Code § 1624 (requiring a writing for finder's fee agreements in real estate transactions, but not for other business transactions); *Palmer v. Wahler*, 133 Cal.App.2d 705, 285 P.2d 8 (Dist.Ct.App.1955). Lehman also argues in the alternative that even if New York law is applicable, his claim falls within an exception to the Statute. By its own terms, § 5–701(a)(10) does not apply "to a contract to pay compensation to an auctioneer, an attorney at law, or a duly licensed real estate broker or real estate salesman." Plaintiff maintains that his alleged oral agreement with Dow Jones is properly viewed as one for compensation for his services as an attorney.

■ Obviously, the first question that must be addressed is whether New York law or California law applies here. To begin to resolve this issue, I turn to fundamental and familiar principles. In a diversity case, a federal court must apply state substantive law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Statutes of frauds are considered "substantive" for the purpose of this rule. *Byrd v. Blue Ridge Rural Elec. Co.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958).

■ Sometimes, as here, it is not clear which state's statute of frauds should be

---

1. While Lehman concedes that no writing now exists that would satisfy the Statute of Frauds, he suggests that such a writing may have existed at one time. He contends that Harris made contemporaneous notes of his telephone conversations with him, and that Harris later de- stroyed those notes to frustrate his claim for a finder's fee. However, the record does not support Lehman's speculation that those notes memorialized his agreement with Dow Jones. *See* Defendant's Reply Mem. in Support of Motion for Summary Judgment at 20–21.

applied. In these circumstances, a federal court ordinarily decides which state's law to apply by using the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). However, when a federal court presides over a case which was transferred to it by another federal court in which venue was proper, it must apply the same choice of law rules the transferring court would have applied. *Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S.Ct. 805, 820, 11 L.Ed.2d 945 (1964); *Davis v. Costa-Garvis*, 580 F.Supp. 1082, 1086 (S.D.N.Y.1984).

■ Although Judge Williams did not explicitly rule whether venue was proper in the Central District of California when he transferred this case to the Southern District of New York, it is clear that it was. There is no dispute that Dow Jones was subject to *in personam* jurisdiction in California and that Lehman resided within the Central District. Lehman Aff. at ¶ 2. Therefore, venue was properly laid in the Central District of California under 28 U.S.C. § 1391(a), and this Court must apply the same choice of law rules Judge Williams would have applied—that is, California's rules.

■ California's approach to choice of law questions is a hybrid of "governmental interest" analysis and "comparative impairment" analysis. *See, e.g., Offshore Rental Co. v. Continental Oil Co.*, 22 Cal.3d 157, 161–65, 148 Cal.Rptr. 867, 869–72, 583 P.2d 721, 723–26 (1978) (*en banc*); *Bernhard v. Harrah's Club*, 16 Cal.3d 313, 320–23, 128 Cal.Rptr. 215, 219–22, 546 P.2d 719, 723–26 (*en banc*), cert. denied, 429 U.S. 859, 97 S.Ct. 159, 50 L.Ed.2d 136 (1976). Under this approach, a court must examine the governmental policies underlying the two state laws involved, and determine whether they genuinely clash. If the two policies do conflict, the court must apply the law of the state whose interest would be "more impaired if its policy were subordinated to the policy of the other state." *Offshore Rental*, 22 Cal.3d at 165, 148 Cal.Rptr. at 872, 583 P.2d at 726.

■ The policies behind the New York and California laws at issue here are clear. New York's Statute of Frauds is designed to protect against sham claims for commissions, thereby enhancing the state's position as a national business center, especially for negotiation of the kind of corporate transactions involved in this case. *Hutner v. Greene*, 734 F.2d 896, 899 (2d Cir.1984); *Intercontinental Planning, Ltd. v. Daystrom, Inc.*, 24 N.Y.2d 372, 382–83, 300 N.Y.S.2d 817, 826–29, 248 N.E.2d 576, 585–588 (1969). On the other hand, California's interest lies in "upholding the reasonable expectations of its residents who are parties to agreements that would be valid and enforceable absent any [Statute of] Frauds restriction." *Denny v. American Tobacco Co.*, 308 F.Supp. 219, 223 (N.D.Cal.1970). At first glance, these two policies appear to conflict.

■ However, Dow Jones contends, and I agree, that California's interest in upholding the reasonable expectations of its residents is not at stake in this case because Lehman should have known that his dealings with Dow Jones would be subject to New York law, including the writing requirement of the New York Statute of Frauds. In this respect, *Denny v. American Tobacco Co.*, 308 F.Supp. 219 (N.D.Cal. 1970), is directly on point. In *Denny*, a California businessman sought to recover a finder's fee from a New York-based corporation on a *quantum meruit* theory. The plaintiff, described by the court as "an astute businessman," had sent a letter offering his services to the corporation's offices in New York, but never entered into an agreement with the defendants. The court stated that it was questionable whether the plaintiff could have had a reasonable expectation of enforcing an agreement with the defendants; it noted that the plaintiff "could well be said to have been on notice that any dealings he had with defendants would be subject to New York law." *Id.* at 223.

Dow Jones correctly points out that plaintiff here is not only an astute busi-

nessman, but a sophisticated lawyer with considerable experience in interstate transactions as well. Thus, he must have known that statutes of frauds exist, and must have, or at least should have, recognized the importance of reducing his alleged agreement with Dow Jones to writing. He also must have realized that his agreement would be governed by New York law, since by his own account, Lehman initiated all of the contacts with Dow Jones by telephoning or writing to the company's New York offices. While Lehman did have some communications with Dow Jones's New Jersey offices, they were the direct result of his inquiries to officers at Dow Jones's New York headquarters. Thus, Lehman should have known that the New York Statute of Frauds would govern his dealings with Dow Jones, and accordingly, he could not have held a reasonable expectation that his alleged oral contract for a finder's fee would be enforceable.

I am not unmindful that on this motion for summary judgment, I must view the relevant facts in the light most favorable to plaintiff, since he is the nonmoving party. *See, e.g., Heyman v. Commerce and Industry Insur. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975). Lehman argues that his two-year relationship with Dow Jones creates at least an issue of fact as to whether he held a reasonable belief that his alleged finder's fee agreement with Dow Jones was enforceable. In particular, he points to his frequent submission letters to Dow Jones in which he stated that he was acting as a finder for Dow Jones and that he was looking to Dow Jones for payment. He notes that no one at Dow Jones ever objected to his characterization of himself as a finder for the company or to his fee structure; similarly, no one ever told him to stop sending submission letters. Yet, even in the most favorable light, these facts do not suggest that Lehman could reasonably expect to compel Dow Jones to abide by the alleged oral agreement. They suggest only that Lehman could reasonably hope that Dow Jones would voluntarily pay him the finder's fee he sought. As a lawyer, plaintiff undoubtedly understood the crit-

ical difference between these two conditions. He must have known that no matter how many submission letters he sent, he could not enforce his finder's fee agreement without a writing signed by an authorized agent of Dow Jones. Thus, I conclude that California's interest in upholding the reasonable expectations of its residents is not at stake here, and that the apparent conflict is actually non-existent. Accordingly, I will apply New York substantive law.

As I have mentioned, New York General Business Law § 5–701(a)(10) provides that a contract to pay compensation for services rendered in negotiating the purchase of a business is void unless it is in writing and signed by the party to be charged. This provision has been held to apply not only to claims for breach of express contract, but also to claims for breach of implied contract, quasi-contract, and *quantum meruit. See Philo Smith & Co., Inc. v. US-LIFE Corp.,* 554 F.2d 34, 35 (2d Cir.1977); *Minichiello v. Royal Business Funds, Inc.,* 18 N.Y.2d 521, 277 N.Y.S.2d 268, 223 N.E.2d 793, *cert. denied,* 389 U.S. 820, 88 S.Ct. 41, 19 L.Ed.2d 72 (1967). Thus, unless Lehman's contract-like claims fall within an exception to the statute, his first four causes of action appear to be barred.

■ Lehman contends that one of the express exceptions to § 5–701(a)(10) is applicable here. The statute provides that no writing is required if the alleged contract is "to pay compensation to an auctioneer, an attorney at law, or a duly licensed real estate broker or real estate salesman." Lehman suggests that his alleged oral agreement with Dow Jones is properly seen as one for compensation for his services as an attorney. Dow Jones concedes that this exception to the statute applies whether or not there exists an attorney-client relationship between the parties to the contract, *see Seligman v. Exquisite Form Indus., Inc.,* 33 A.D.2d 550, 304 N.Y.S.2d 567 (1st Dep't 1969); *Harris v. Sobel,* 31 A.D.2d 529, 295 N.Y.S.2d 181 (1st Dep't 1968), but it contends that the exception is limited to attorneys admitted to practice in the State

of New York. Not surprisingly, Lehman argues that the provision extends to attorneys admitted to practice in *any* state. For the reasons stated below, I agree with Dow Jones that the exception is appropriately restricted to attorneys admitted to the Bar of the State of New York.

First, two recent decisions discussing the exception appear to limit it to attorneys admitted to practice here. In the first case, *Hutner v. Greene*, 734 F.2d 896 (2d Cir.1984), the plaintiff, although a California resident, was an attorney admitted to practice in New York. The court of appeals applied New York law to dismiss the plaintiff's express contract claim for lack of a material term, but it held that § 5–701(a)(10) did not bar the plaintiff's *quantum meruit* claim because he was a New York attorney, and therefore came within the exception. *Id.* at 900.

The court noted that the statute "explicitly exempts attorneys at law *in New York* from its requirement of a writing for agreements of the kind at issue." *Id.* (emphasis added). The court went on to hold that so long as an attorney is admitted to practice in New York, he falls within the exception whether or not he actually practices in New York or anywhere else.

> It is true that Hutner, *although admitted to practice in New York*, has not practiced law in New York or anywhere else for almost fifty years. Nevertheless, the New York Court of Appeals has declined to construe this exemption narrowly and has thus held that an attorney need not enjoy the attorney-client relationship with the parties from whom he seeks compensation in order to avail himself of the statutory exemption. *Rever v. Kayser-Roth Corp.*, 29 A.D.2d 920 [290 N.Y.S.2d 154 (1968)], *aff'd*, 26 N.Y.2d 652, 308 N.Y.S.2d 384, 256 N.E.2d 540 (1970). Absent some indication from the New York courts or legislature that a functional rather than literal interpretation is to be applied, *we decline to read the words "attorney at law" to cover some members of the New York bar and not others*. We conclude, therefore, that

New York's Statute of Frauds does not bar Hutner's *quantum meruit* claim.

*Id.* (emphasis added). The court's last reference to "some members of the New York bar and not others" suggests rather strongly that the court read the exception as applying only to New York lawyers.

The Appellate Division, First Department, made a similar suggestion in *Harris v. Sobel*, 31 A.D.2d 529, 295 N.Y.S.2d 181 (1st Dep't 1968). The court wrote:

> With due consideration of the terms of the statute and upon a review of legislative data, we conclude that the statutory exclusion in favor of an attorney at law (*admitted in New York*) applies whether or not there existed an attorney-client relationship between the parties.

31 A.D.2d at 529–30; 295 N.Y.S.2d at 182 (emphasis added). Again, it appears that the court construed the provision as applying only to New York attorneys.

I am persuaded that I should follow this judicial construction because it comports with the policies underlying the Statute. As noted above, the aim of § 5–701(a)(10) is to prevent unfounded claims for commissions. The reason why attorneys, auctioneers, real estate brokers and salesmen can safely be exempted from its provisions is that the state has developed independent systems to license, regulate, and discipline these professionals.

For example, New York General Business Law § 21 *et seq.* regulates the business practices of auctioneers. Under § 21, an auctioneer may not receive a commission in excess of two and one-half percent of the amount of the sale unless he obtains a previous written agreement from the owner of the goods. If he violates the statute, he is subject to a fine. Similarly, New York Real Property Law § 440 *et seq.* regulates the activities of real estate brokers and salesmen. Section 441–c in particular permits the department of state to revoke or suspend real estate licenses and to impose substantial fines on brokers and salesmen for fraudulent or dishonest practices. Finally, of course, the state has plenary power to regulate the professional

activities of attorneys. It can impose a wide range of sanctions for misconduct, from a reprimand to disbarment.

Because these professionals are subject to such extensive regulation, the legislature apparently felt it unnecessary to include them within the general provision of the Statute of Frauds. *See* 1949 Report of N.Y. Law Rev.Comm., N.Y.Legis. Doc., 1949, No. 65(G) at 616. The state has other means of discouraging these individuals from making false claims for commissions, but auctioneers, attorneys, and real estate brokers and salesmen are not subject to the state's disciplinary powers if they are not licensed by the state. Thus, the very reason for exempting these professionals from the Statute of Frauds virtually compels a construction of the Statute that distinguishes between New York professionals and out-of-state professionals—in this case, between attorneys who are admitted to practice in New York and attorneys who are not.

For this reason, I conclude that Lehman, who is not admitted to practice law here, does not fall with the exception to the Statute of Frauds. As mentioned above, § 5–701(a)(10) not only bars claims for breach of express contract, but also for breach of implied contract, quasi-contract, and *quantum meruit.* Accordingly, Dow Jones's motion for summary judgment is granted with respect to plaintiff's first four causes of action.

### B. *Lehman's Fraud Claim*

█ Dow Jones has also moved for summary judgment on Lehman's fifth cause of action, his claim of fraud. Dow Jones contends that plaintiff's fraud claim is simply a shadow of his contract claims, and that since those claims are precluded by the Statute of Frauds, his fraud claim should be barred as well. I agree.

Lehman's fraud claim does indeed appear to be nothing more than his contract claims dressed in different garb. He alleges that Dow Jones encouraged him to submit acquisition proposals with fraudulent prom-

ises of payment. In other words, the "fraud" consisted of Dow Jones's failure to honor the alleged oral promise; not surprisingly, the damages Lehman claims for this fraud are identical to the amount of the fee due under the alleged oral agreement.

New York courts have made it clear that a plaintiff may not circumvent the Statute of Frauds, as Lehman has attempted here, by simply recasting his claim for breach of contract as an action for fraud. For example, in *Solin Lee Chu v. Ling Sun Chu,* 9 A.D.2d 888, 193 N.Y.S.2d 859 (1st Dep't 1959), the Appellate Division, First Department expressly stated that

> the plaintiff may not, through the cause of action in fraud, seek to enforce the promises of the defendant made in the agreement which we have held to be unenforceable. Damages which would flow from the breach of the agreement, were it enforceable, may not be recovered here....

9 A.D.2d at 889; 193 N.Y.S.2d at 860 (citations omitted). In short, a plaintiff must show that his fraud claim is somehow distinct from his contract action. Lehman has not done so. Accordingly, I grant Dow Jones's motion for summary judgment with respect to Lehman's claim of fraud.

### C. *Lehman's Claim for Breach of Confidence*

Finally, Dow Jones moves for summary judgment on plaintiff's breach of confidence claim. Lehman alleges that Dow Jones knew that the information he sent to it concerning Continental Cablevision was confidential, but that Dow Jones nonetheless intentionally disclosed that information to others with the aim of depriving him of a finder's fee. Dow Jones contends that this claim is wholly without merit; again I agree.

█ In order to maintain an action for breach of confidence, a plaintiff must demonstrate at the very least that the alleged

secret was in fact a secret and that he protected it as such. *See Eagle Comtronics, Inc. v. Pico, Inc.,* 89 A.D.2d 803, 803–04, 454 N.Y.S.2d 470, 472 (4th Dep't 1982); *Rototron Corp. v. Lake Shore Burial Vault Co., Inc.,* 553 F.Supp. 691, 697 (E.D. Wis.1982), *aff'd,* 712 F.2d 1214 (7th Cir. 1983) (applying New York law). Lehman fails on both counts.

First, the information Lehman gave to Dow Jones appears to be derived wholly from public sources. He has not identified one piece of information that was not a matter of public knowledge.

Second, he disseminated the same information he gave to Dow Jones to at least four other companies at the same time. *See* Appendix to Defendant's Mem. in Support of Motion for Summary Judgment, Exs. 1, 4–7. In his letters to one of those companies—General Electric—Lehman did not even state that the information was confidential. Under these circumstances, I must agree that Lehman's claim for breach of confidence is entirely without merit. Accordingly, I grant defendant's motion for summary judgment.

*Conclusion*

For the reasons stated above, I grant summary judgment to defendant Dow Jones with respect to all six of plaintiff's causes of action. The complaint is hereby dismissed and the Clerk of the Court is directed to enter judgment in favor of defendant.

SO ORDERED.