Andrew SUGERMAN, Plaintiff,

v.

MCY MUSIC WORLD, INC., MCY America, Inc., and MCY.Com, Inc., Defendants.

No. 00 CIV. 3365(RMB).

United States District Court, S.D. New York.

Aug. 14, 2001.

Dale A. Schreiber, Proskaver Rose, New York City, for Plaintiff.

James A. Janowitz, Pryor, Cashman, Sherman & Flynn, New York City, for Defendants.

### ORDER

BERMAN, District Judge.

## I. Introduction

This is a dispute over the meaning of a letter agreement dated February 22, 1999 ("Agreement"). Plaintiff Andrew Sugerman ("Sugerman" or "Plaintiff") claims that he is entitled to at least $13,315,000.00 in finder's fees under the Agreement. (Plaintiff's Complaint, dated May 2, 2000, ¶ 57(A)) ("Complaint"). Defendants MCY Music World, Inc., MCY America, Inc., and MCY.com, Inc. (collectively "Defendants") assert that Plaintiff is not entitled to compensation under the Agreement because neither Sugerman nor his business associate Todd Sanders ("Todd" or "Sanders") invested directly in Defendants.[1] Defendants move for summary judgement on all three claims asserted by Plaintiff, namely: (1) breach of contract; (2) promissory estoppel; and (3) unjust enrichment. **For the reasons set forth below, the Court grants in part and denies in part Defendants' motion for summary judgement.**

## II. Background

Sugerman, who "has been involved in financing and production in the entertainment business for over twenty five years,"(Complaint ¶ 3), "first spoke to Fritsch[2] by telephone in January 1999"

---

1. The clauses of the Agreement which are central to the dispute state, respectively, the following:
 (i) In the event that we close this deal with Todd making a substantial cash injection into MCY, we would be happy to offer you, according to the Lehman formula, the following commission rate ...
 5% on the first 5 million dollars
 4% on the following 3 million dollars
 3% on the following 3 million dollars
 2% on the following 3 million dollars
 1% on each following million dollars.
 (ii) Please sign, and agree to the fact that any sort of private placement or flotation done by someone other than Todd Sanders, this agreement will not be in place. (Agreement, p. 1–2).

2. Bernhard Fritsch ("Fritsch") is the President of MCY America, Inc., MCY Music World, Inc., and MCY.com, Inc. (Defendants' Memorandum of Law in Support of Their

(Plaintiff's Memorandum of Law in Opposition to Defendants' Renewed Motion for Summary Judgement, dated Mar. 2, 2001, p. 3) ("P.'s Memo."). Sugerman and Fritsch discussed, among other things, Defendants' business and Defendants' interest in raising capital to expand its business. (*Id.*, p. 3). Sugerman alleges that he "was interested in the company and offered to put Fritsch in touch with people who may be able to assist in MCY's endeavors." (Sugerman's Affidavit, dated Feb. 28, 2001, ¶ 7) ("P.'s Aff."). "[Sugerman] telephoned Fritsch and told him that [he] could introduce MCY to [Todd] Sanders ... an independent financial consultant who had helped to take several Internet companies ... public in the past ..." (P.'s Aff. ¶ 9). Defendants, on the other hand, allege that Sugerman told Fritsch that Sanders was "a successful Wall Street investor ... who might be willing to make a substantial equity investment in MCYM by way of a private stock placement." (Fritsch's Affidavit, dated Aug. 1, 2000, ¶ 8) ("Fritsch's Aff.").[3]

On February 22, 1999, in New York, Fritsch signed and faxed to Sugerman the Agreement. On February 24, 1999, Sugerman countersigned the Agreement. (*Id.*, p. 2).

Sanders claims that he had preliminary contact with Defendants, via telephone, (*Id.*, p. 24–26),[4] and in person with Richard deBois, Defendants' employee, (Sanders' Dep., p. 24–25), before his first meetings with Fritsch in New York in March 1999 (*Id.*, p. 28). Sanders claims that he told Fritsch in those initial conversations what services he could provide for Defendants: "[c]apital structure [and] mergers

and acquisitions." (Sanders' Dep., p. 29). Sugerman and Sanders assert that a significant working relationship developed between Sanders and Defendants, which included Sanders' introducing Defendants to investment banks, among others, Gruntal & Co., L.L.C. ("Gruntal"), which ultimately "served as the investment bank for MCY's financings." (P.'s Aff. ¶ 17). Sanders spent "a tremendous amount" of time working for Defendants in New York, (Sanders' Dep., p. 37, 40, 50), "[g]oing through [MCY's] books and records ... meeting with their attorneys. Meeting with investment banks. Meeting with some potential joint ventures. Meeting with accountants." (*Id.*, p. 38). Sanders claims that he was "the lead man" in restructuring the ownership of Defendants' intellectual property, a step necessary for Defendants to be able to go forward with their financing. (*Id.*, p. 38–39). "Sanders brought MCY to Health Builders Inc., a public 'shell' corporation (Sanders' Dep. 44–45) and structured and advised upon a reverse merger into that shell (Sanders' Dep. 48)," thereby facilitating Defendants' financing. (P's Memo., p. 10). In the summer of 1999, Sanders made four trips to Germany, "[m]eeting with investment banks. Meeting with public relations firms. Meeting with investors." (Sanders' Dep., p. 50). Sanders also made a personal loan of $100,000 to Defendants through his business, Strategic Capital Consultants, Inc., to help keep Defendants operational until additional capital was raised. (*Id.*, p. 41–42). Defendants compensated Sanders for his efforts with 1,150,000 shares of stock in Defendants. (Sanders' Dep., p. 73–74).

---

Renewed Motion for Summary Judgment, dated February 9, 2001, p. 3) ("D.'s Memo.").

**3.** Sanders refers to himself as a financial consultant and business developer, and claims that he rarely invests personally in client com-

panies. (Sanders' Deposition, dated Jan. 25, 2001, p. 11, 16, 17) ("Sanders' Dep.").

**4.** "I don't recall that I spoke to Sanders." (Fritsch's Dep., p. 67).

Defendants' private placement financing, accomplished in August and October 1999 and March 2000, realized net proceeds of over $70.1 million. (D.'s Memo., p. 8). On December 21, 1999, and again on January 26, 2000 and February 2, 2000, Sugerman's attorney wrote to Defendants, asserting that "Mr. Sugerman's introduction of your corporations to Todd Sanders, as contemplated under the Agreement, was instrumental in the financing of MCY in an amount exceeding $30 million which occurred in 1999. Notwithstanding the foregoing, Mr. Sugerman has not received the compensation due to him under the Agreement," (Plaintiff's letter to Defendants, dated Dec. 21, 1999, p. 1), and "requesting that defendants honor the Agreement and properly compensate Mr. Sugerman in accordance with its terms" (Complaint ¶ 37, 38). Defendants responded by telephone, "offer[ing] to pay Sugerman a commission under the Agreement" based (solely) on Sanders' $100,000 loan to Defendants. (D.'s Memo., p. 9, note 8); (Plaintiff's letter to Defendants, dated Jan. 26, 2000, p. 1); (Plaintiff's letter to Defendants, dated Feb. 2, 2000, p. 1).

## III. Standard of Review

Federal Rule of Civil Procedure ("Fed. R.Civ.P.") 56(c) provides that summary judgement "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgement as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgement "is appropriate only 'after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Thornton v. Syracuse Savings Bank*, 961 F.2d 1042, 1046 (2d Cir.1992), *quoting Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "In deciding whether to grant summary judgement, all inferences drawn from the materials submitted to the trial court are viewed in a light most favorable to the party opposing the motion. The nonmovant's allegations are taken as true and it receives the benefit of the doubt when its assertions conflict with those of the movant." *Cruden v. Bank of New York*, 957 F.2d 961, 975 (2d Cir.1992). "Only when no reasonable trier of fact could find in favor of the moving party should summary judgement be granted." *Id.*

## IV. Analysis

### Choice of Law

■ Plaintiff asserts that the Court should apply California law in this action. Plaintiff contends that "Mr. Sugerman is a Californian ... Defendants' President, Bernhard Fritsch, reached out to Mr. Sugerman in California, and asked Mr. Sugerman to provide him with an introduction to Todd Sanders, who was also based in Los Angeles at the time." (Plaintiff's letter, dated June 13, 2000). Further, Sugerman claims that "the first meetings pursuant to the introduction took place in California ... [and] although the subsequent private placement was structured in New York, the majority of the resulting finance was obtained in Europe." (P.'s Memo., p. 22, citing Fritsch's Aff. ¶ 34). Plaintiff claims that "here, Sugerman's services were entirely rendered in California, and only California has a substantial relationship with the formation and performance of the Agreement." (*Id.*).

Defendants contend that "New York law is properly applied to Sugerman's claim of an entitlement to compensation deriving

from the Gruntal private offerings." (D.'s Memo., p. 17). Defendants assert that "Sugerman never demonstrated any intention to rely on California law," that "the subject matter of the claims reflects more substantial contacts with New York than with California," that "the Gruntal transactions on which Sugerman bases his claim are highly New–York focused," and that "New York has a strong state interest in enforcing its statute of frauds . . . and protecting these New York defendants against unfounded claims of oral finder's fees agreements." (*Id.* at 17–20).

◾ The Court finds that New York law applies. "It is axiomatic that a federal court sitting in diversity follows the choice of law principles of the state of its situs." *Reeves v. American Broadcasting Companies, Inc.,* 719 F.2d 602, 605 (2d Cir.1983), *citing Klaxon Co. v. Stentor Elec. Mfg.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). "The law of the jurisdiction having the greatest interest in the litigation should apply, provided that that jurisdiction possessed sufficient contacts with the litigation." *Fort Howard Paper Co.v. William D. Witter, Inc.,* 787 F.2d 784, 790 (2d Cir.1986). *See also Intercontinental Planning v. Daystrom, Inc.,* 24 N.Y.2d 372, 383–84, 300 N.Y.S.2d 817, 248 N.E.2d 576, 582–83 (1969). "Under the rule of *Intercontinental Planning,* where the parties negotiated key provisions in this jurisdiction, the defendant resided in this state, and the case was brought here, there are sufficient contacts with New York to give New York a substantial interest in applying its policy." *Merex A.G. v. Fairchild Weston Systems,* 810 F.Supp. 1356, 1366 (S.D.N.Y.1993), *aff'd,* 29 F.3d 821 (2d Cir. 1994), *citing Intercontinental Planning,* 24 N.Y.2d at 383–84, 300 N.Y.S.2d 817, 248 N.E.2d at 582–83.

The Court further finds that New York has substantial contacts to this case.

First, Defendants are headquartered and, therefore, "reside" in New York. (Complaint ¶ 4, 5, 6). Second, Sugerman filed this action in New York. Third, Fritsch alleges, and Sugerman does not dispute, that the parties negotiated the Agreement, at least in part, via telephone calls placed to and from New York. (Fritsch's Dep., p. 41); (P.'s Aff. ¶ 7); (P.'s Memo., p. 3). Further, the Agreement was drafted in New York and does not state that California law applies. Finally, the private placements at issue were effected primarily in New York. (Sanders' Dep., p. 37–50); (D.'s Memo., p. 18).

◾ The Court also finds that New York has "the greatest interest in the litigation." *Merex,* 810 F.Supp. at 1365. New York has a strong concern over (oral) agreements to pay finder's fees. *Intercontinental Planning,* 24 N.Y.2d at 383–84, 300 N.Y.S.2d 817, 248 N.E.2d at 582–83. Under GOL § 5–701(a)(10), "any contract to pay compensation for services rendered in . . . negotiating the purchase, sale [or] exchange of a business opportunity . . . is void unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith . . . There is no doubt that § 5–701(a)(10) bars oral finder's-fee contracts." *Fort Howard,* 787 F.2d at 789, note 2 (citations omitted). *See also Hutner v. Greene,* 734 F.2d 896, 900 (2d Cir.1984). New York courts seek "to reduce the substantial number of unfounded and multiple claims for commissions asserted by finders. This purpose was particularly compelling in light of New York's traditional role as an international clearing house and market place." *Fort Howard,* 787 F.2d at 790 (citations omitted). New York's is also interested in protecting against "contract cases which all too often degenerate[ ] into swearing

contests" and with the attendant risk of perjury.[5] *Merex*, 810 F.Supp. at 1366.

*Breach of Contract*

 Sugerman alleges that Defendants breached the Agreement by "refus[ing] to pay Mr. Sugerman the agreed-upon compensation for his introduction to Mr. Sanders," who, in turn, made substantial efforts on behalf of Defendants in the Gruntal private placements. (Complaint ¶ 45). Plaintiff contends that "the Agreement is ambiguous and may be interpreted to provide for compensation for Sanders' assistance in MCY's private placement financings," and that summary judgement must, therefore, be denied. (P.'s Memo., p. 14). Defendants assert that "Sugerman's claim for compensation under the Agreement fails on its face because the Agreement's plain language prohibits such a claim." (D.'s Memo., p. 11). The Agreement, according to Defendants, provided for Sugerman's compensation only "in the even [sic] that Todd Sanders will do a substantial injection [of his own funds]." (Agreement, p. 1).

 The Court believes there is an unresolved material issue of fact regarding the meaning of the Agreement. *Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 574 (2d Cir.1993) ("Several ambiguities appear in the October 13 letter ... [S]ummary judgement should have been denied. Instead, this issue must be presented at trial for the trier of fact to determine the parties' intent."). "The rule is well settled that the construction of a plain and unambiguous contract is for the court to pass on, and the circumstances extrinsic to the agreement will not be considered when the intention of the parties can be gathered from the instrument itself." *Airco Alloys Division, Airco Inc. v. Niagara Mohawk Power Corporation*, 430 N.Y.S.2d 179, 184, 76 A.D.2d 68, 76–77 (4th Dep't 1980) (citations omitted). *See also Alternative Thinking Systems, Inc. v. Simon & Schuster, Inc.*, 853 F.Supp. 791 (S.D.N.Y.1994); *Marvel Entertainment Group, Inc. v. ARP Films, Inc.*, 684 F.Supp. 818 (S.D.N.Y.1988). "Contractual language is unambiguous when it has a 'definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion.' " *John Hancock Mutual Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 461 (2d Cir.1994), *quoting Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir.1989). "[W]here the language employed in a contract is ambiguous or equivocal, the parties may submit parol evidence concerning the facts and circumstances surrounding the making of the agreement." *Airco*, 430 N.Y.S.2d at 184. However, "resolving an ambiguous term in a written contract through extrinsic evidence remains squarely within the province of the trier of fact. For that reason, summary judgement in such circumstances is inappropriate." *Consarc Corp.*, 996 F.2d at 573. *See also Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2d Cir.2000).

---

**5.** California has an interest in "upholding the reasonable expectations of its residents who are parties to agreements that would be valid and enforceable absent any Frauds restrictions." *Denny v. American Tobacco Co.*, 308 F.Supp. 219, 223 (N.D.Cal.1970) (applying New York law). Yet, "[t]his general policy ... must yield to New York's unique concern for the problems associated with oral finder's-fee arrangements. New York's status as an international clearing house and market place would be severely eroded were the more general interests ... held to govern the relationships at issue here." *Fort Howard*, 787 F.2d at 790 (citations omitted). *See also Merex*, 810 F.Supp. at 1366 ("New York's policy of protecting its residents from unfounded finder's fee claims is clear ...").

■ The Agreement states that Sugerman was to be compensated "in the event that we close this deal with Todd making a substantial cash injection into MCY." (Agreement, p. 1). It provides further that Sugerman "agree[s] to the fact that any sort of private placement or floatation done by someone other than Todd Sanders, this agreement will not be in place." (*Id.*, p. 1–2). Viewing the Agreement in the light most favorable to the Plaintiff, the Court finds that the Agreement is reasonably susceptible of both Plaintiff's and Defendants' interpretations. A jury should make the call. Parol evidence limited to the meaning of the phrases "in the even [sic] that Todd Sanders will **do** a substantial injection . . . ." and "any sort of private placement or floatation **done by** someone other than Todd Sanders . . ." will be allowed. (*Id.*) (emphasis added).

■ There is no ambiguity regarding stock options. There is plainly no stock option agreement. Defendants correctly assert that "[t]he language in the Agreement concerning the potential grant of stock options is precatory and reflects no actual promise or commitment," and that "the stock option provision lacks so many terms that it surely suffers from impenetrable vagueness and uncertainty and is simply incapable of being enforced." (D.'s Memo., p. 23). Plaintiff claims that his "entitlement" to stock options is enforceable, at least when extrinsic oral promises are taken into consideration. (P.'s Memo., p. 17).[6]

■ "Few principles are better settled in the law of contracts than the requirement for definiteness. If an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract. The doctrine of definiteness serves two related purposes. First, unless a court can determine what the agreement is, it cannot know whether the contract has been breached, and it cannot fashion a proper remedy . . . Second, the requirement of definiteness assures that courts will not impose contractual obligations when the parties did not intend to conclude a binding agreement." *Cobble Hill Nursing Home Inc. v. Henry & Warren Corp.*, 74 N.Y.2d 475, 482, 548 N.Y.S.2d 920, 548 N.E.2d 203, 206 (1989). *See also Barry v. Liddle, O'Connor, Finkelstein & Robinson*, 98 F.3d 36, 40 (2d Cir.1996), *citing Cobble Hill*, 74 N.Y.2d at 482, 548 N.Y.S.2d 920, 548 N.E.2d at 206. "Dictated by these principles, it is rightfully well settled in the common law of contracts in this State that a[n] . . . agreement . . . in which a material term is left for future negotiations," Joseph *Martin, Jr., Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 109, 436 N.Y.S.2d 247, 417 N.E.2d 541, 543 (1981), or in which "[t]here is no way to tell from the face of the document how to establish" missing material terms, *Express Indus. & Terminal Corp. v. New York State DOT*, 93 N.Y.2d 584, 590, 693 N.Y.S.2d 857, 715 N.E.2d 1050, 1053 (1999), is unenforceable. These general principles have been applied in cases involving stock options. *See Ward v. Pricellular Corp.*, 1991 WL 64043 at *6, 1991 U.S.Dist. LEXIS 5000 at *15 (S.D.N.Y. Apr. 16, 1991), *citing Martin Delicatessen*, 52 N.Y.2d at 109, 436 N.Y.S.2d at 249, 417 N.E.2d at 543; *Kunica v. St. Jean Fin.*, 1998 WL 437153 at *5, 1998 U.S.Dist. LEXIS 11867 at *15–17 (S.D.N.Y. July 29, 1998), *quoting Cobble Hill*, 74 N.Y.2d at 482, 548

---

**6.** The Agreement states: "Also, in the event that Todd Sanders will do a substantial injection, the company would like to put you on the company stock option plan, which is in development at this point in time. As soon as the plan is properly in place, we would be happy to address the relevant documents to you immediately." (Agreement, p. 1–2).

N.Y.S.2d 920, 548 N.E.2d at 203 (" 'If an agreement in not reasonably certain in its material terms, there can be no legally enforceable contract' . . . [The] agreement is silent with respect to the amount of stock options . . . to be awarded, the exercise price of the stock options or the date on which Rogers could exercise the options. These omissions, which go to the entire essence of the contemplated transaction, are fatal . . .").

Here, there is no manifestation of mutual assent to the material terms of any stock option arrangement, including: how many options might be granted of what class of stock; when the options might be granted; the option term; the exercise price; and the expiration date. "There is no way to tell from the face of the document how the parties intended to establish" the missing material terms, *Express Indus. & Terminal Corp.*, 93 N.Y.2d at 590, 693 N.Y.S.2d 857, 715 N.E.2d at 1053, which were "left for future negotiations" *Martin Delicatessen*, 52 N.Y.2d at 109, 436 N.Y.S.2d 247, 417 N.E.2d at 543. The stock option plan was not even extant when the Agreement was formed, i.e. it was "in development at this point in time." (Agreement, p. 1–2).

*Promissory Estoppel*

Sugerman alleges that Fritsch, on behalf of Defendants, "promised that Mr. Sugerman was entitled to compensation . . . for his efforts in enabling defendants to obtain financing through Mr. Sanders," that he "relied on defendants' promises," and that he "has been damaged" by Defendants' "refusing to pay . . . the compensation." (Complaint ¶ 47–52). Defendants assert that Plaintiff's promissory estoppel claim is barred by GOL § 5–701(a)(10). (D.'s Memo., p. 21–22) ("[A]n alleged oral promise cannot be used to estop a statute of frauds defense unless the circumstances make it unconscionable to deny the prom-

ise on which the plaintiff relied; and the loss of a finder's fee is not unconscionable . . .").

GOL § 5–701(a)(10) states that "any contract to pay compensation for services rendered in . . . negotiating the purchase, sale [or] exchange of a business opportunity . . . whether the contract be implied in fact or in law to pay reasonable compensation, is void unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith . . ." *Fort Howard*, 787 F.2d at 789, note 2 (citations omitted). "Under New York law, the use of promissory estoppel to overcome the Statute of Frauds has been strictly limited to those rare cases when the circumstances render the denial of recovery 'unconscionable.' " *Mobile Data Shred v. United Bank of Switzerland*, No. 99 Civ. 10315, 2000 WL 351516 (S.D.N.Y. Apr. 5, 2000). "[T]o succeed on this claim plaintiff must establish three elements: (1) a clear and unambiguous promise; (2) a reasonable and foreseeable reliance by the party to whom the promise was made; and (3) an 'unconscionable injury' suffered by plaintiff by reason of plaintiff's reliance. **As to the third element, other than in the most exceptional cases, courts have consistently held that lost fees . . . constitute insufficient injury to invoke the doctrine of promissory estoppel as a bar to the assertion of a Statute of Frauds defense.**" *Belotz v. Jefferies & Co., Inc.*, No. 98 Civ. 2587, 1999 WL 587916 (S.D.N.Y. Aug. 4, 1999), *aff'd*, 213 F.3d 625 (2d Cir.2000) (citations omitted) (emphasis added).

Viewing this claim in the light most favorable to the Plaintiff, the Court finds that, even assuming that a clear and unambiguous promise for compensation and reasonable reliance on that promise

has been shown,[7] Sugerman has failed to establish as a matter of law that he was "unconscionably injured." Finder's fee damages "represent expectation damages or the benefit of the oral contract, and do not qualify as unconscionable under the statute of frauds." *Bibeault v. Advanced Health Corp.*, No. 97 Civ. 6026, 1999 WL 301691 at *7 (S.D.N.Y. May 12, 1999). *See also Weissman v. Seiyu, Ltd.*, No. 98 Civ. 6976, 2000 WL 42205 at *10 (S.D.N.Y. Jan. 18, 2000) ("[P]laintiff's loss of his [finder's and negotiator's] commission . . . [is] not enough to rise to the level of unconscionable.").

### Unjust Enrichment

■ Plaintiff asserts that "Defendants agreed to compensate Mr. Sugerman for the introduction . . . and would be unjustly enriched should they be permitted to retain the benefits of the introduction without compensating Mr. Sugerman . . ." (Complaint ¶ 55). Defendants claim that Sugerman's unjust enrichment claim is barred by GOL § 5–701(a)(10), whose "purpose would obviously be defeated if a party could simply evade it by recasting his oral agreement claim as a quasi-contract claim." (D.'s Memo., p. 22). Defendants also allege that "Sugerman cannot press his quasi-contract theories in the face of the valid Agreement that governs the parties' rights and obligations." *Id.*

■ Defendants are correct. Except "where there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue," *Joseph Sternberg, Inc. v. Walber 36th Street Assoc.*, 187 A.D.2d 225, 594 N.Y.S.2d 144 (1st Dep't 1993), "[t]he law is well-settled that a contract cannot be implied in fact when there is an express contract governing the subject matter involved." *GSGSB, Inc. v. New York Yankees*, 862 F.Supp. 1160, 1170 (S.D.N.Y.1994). *See also Kreiss v. McCown De Leeuw & Co.*, 131 F.Supp.2d 428, 437 (S.D.N.Y.2001) ("New York law does not permit recovery in *quantum meruit* where an express agreement covers the same subject matter involved.").

■ Quasi-contract claims are barred by GOL § 5–701(a)(10). "The Legislature amended subdivision 10 to clearly apply the section to finders and to preclude any recovery in quantum meruit . . . The nature of the transaction is such that, in the absence of the requirement of a writing, unfounded and multiple claims for commissions are frequently asserted . . . [T]o allow recovery for the reasonable value of these services is to substantially defeat the writing requirement." *Minichiello v. Royal Business Funds Corp.*, 18 N.Y.2d 521, 525, 277 N.Y.S.2d 268, 223 N.E.2d 793, 795 (1966). *See also Lee v. St. Joe Paper Co.*, 371 F.2d 797, 799–800 (2d Cir.1967), *quoting Minichiello*, 18 N.Y.2d at 525, 277 N.Y.S.2d 268, 223 N.E.2d at 795 ("The Court of Appeals concluded that 'the 1949 Legislature intended to include finders within the operation of subdivision 10 of section 31 and to preclude any recovery in quantum meruit' . . . Entry of [summary] judgment for defendant is ordered."). "[W]hen N.Y.Gen.Oblig.Law § 5–701(a)(10) applies, 'a plaintiff may not circumvent the statute of frauds by claiming unjust enrichment.'" *Belotz*, 1999 WL 587916 at *5, *quoting Ellis v. Provident Life & Accident Ins. Co.*, 3 F.Supp.2d 399,

---

**7.** It is unclear whether the first two elements of Plaintiff's promissory estoppel claim have been met. Certainly, Defendants have not conceded that any promises of compensation beyond the Agreement were made. (Fritsch's Dep., p. 46–48); (Fritsch's Aff. ¶ 9, 10). Plaintiff's assertion that he reasonably and foreseeably relied on the alleged promise(s) is not free from doubt. (Complaint ¶ 47–52); (P.'s Aff. ¶ 1–18); (P.'s Memo., p. 22–24).

410 (S.D.N.Y.1998), *aff'd,* 172 F.3d 37 (2d Cir.1999) ("New York law prevents a plaintiff from circumventing the reach of the statute of frauds by asserting a quasi-contract claim, such as . . . unjust enrichment"). *See also Sater v. Wyckoff Heights Hospital,* 228 A.D.2d 427, 643 N.Y.S.2d 664 (2nd Dep't 1996).

### V. Conclusion and Order

For the foregoing reasons, Defendants' motion for summary judgement is granted in part and denied in part. The parties are directed to appear at a scheduling/status conference on August 29, 2001 at 12:00 noon in Courtroom 706 of the United States Courthouse, 40 Centre Street, New York, New York. **The parties are also directed to engage in good faith settlement negotiations prior to the conference.**